# Exhibit A



Circuit Court For Prince George's County
Clerk Of The Circuit Court
Courthouse
Upper Marlboro, Md. 20772-9987
MD Relay Service Voice/ TDD
1-800-735-2258

**Case No.:** CAL20-16029

**Other Reference No.(s):** ....................................

**Child Support Enforcement Number:** ...................................

**Date issued:** September 22, 2020

To: Kendra Ross
c/o Gillian Chadwick
Washburn University School of Law
1700 SW College Avenue
Topeka, KS 66621

# WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this Court, to the attached complaint filed by;

AEREALE JENKINS
P.O. BOX 230
BRANDYWINE MD 20613

This summons is effective for service only if served within 60 days after the date it is issued.

_Mahasin El Amin_
Clerk of the Circuit Court

#26

To the person summoned:

Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.

Personal attendance in court on the day named is NOT required.

Proper Courtroom attire is expected. Anything that you would wear to an office that presents a professional appearance is appropriate. Please no shorts, cut-off jeans, halter, tank or tube tops or other attire that reveals the abdomen or lower back, spandex or mesh garments.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

# SHERIFF'S RETURN

Circuit Court for <u>Prince George's County</u>

To:..................................................

Sheriff fee:................................By:.........................................................................

Served:...........................................................................................................................

Time:...................Date:.................................................................................................

Unserved (Reason):..........................................................................................................

With the following:

      ☐ Summons                      ☐ Counter Complaint
      ☐ Complaint                ☐ Domestic Case Information Report
      ☐ Motions                   ☐ Financial Statement
      ☐ Petition and Show Cause Order    ☐ Other: _____

                                                  **(please specify)**

Was unable to serve because:

      ☐ Moved; left no forwarding address    ☐ No such address
      ☐ Address not in Jurisdiction          ☐ Other: _____

                                                  **(please specify)**

Sheriff Fee: $_____

                                      _____
                                   **(Serving Sheriff's Signature & Date)**

Instructions to Private Process:

1. This Summons is effective for service only if served within 60 days after the date issued.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



Circuit Court For Prince George's County
Clerk Of The Circuit Court
Courthouse
Upper Marlboro, Md. 20772-9987
MD Relay Service Voice/ TDD
1-800-735-2258

**Case No.:** CAL20-16029

**Other Reference No.(s):** ...................................

**Child Support Enforcement Number:** ...................................

**Date issued:** September 22, 2020

To: McGuire Woods LLP
2001 K Street NW, Suite 400
Washington, DC 20006

# WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this Court, to the attached complaint filed by;

<u>AEREALE JENKINS</u>
<u>P.O. BOX 230</u>
<u>BRANDYWINE MD 20613</u>

This summons is effective for service only if served within 60 days after the date it is issued.

_Mahasin ___ (min_
Clerk of the Circuit Court

#⍰⍰

To the person summoned:

Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.

Personal attendance in court on the day named is NOT required.

Proper Courtroom attire is expected. Anything that you would wear to an office that presents a professional appearance is appropriate. Please no shorts, cut-off jeans, halter, tank or tube tops or other attire that reveals the abdomen or lower back, spandex or mesh garments.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

# SHERIFF'S RETURN

Circuit Court for <u>Prince George's County</u>

To: ..................................................

Sheriff fee: ................................. By: ..........................................................................................

Served: .......................................................................................................................................

Time: ......................... Date: ........................................................................................................

Unserved (Reason): ....................................................................................................................

With the following:

    ☐ Summons                      ☐ Counter Complaint
    ☐ Complaint                  ☐ Domestic Case Information Report
    ☐ Motions                      ☐ Financial Statement
    ☐ Petition and Show Cause Order   ☐ Other: _____

                                                **(please specify)**

Was unable to serve because:

    ☐ Moved; left no forwarding address   ☐ No such address
    ☐ Address not in Jurisdiction        ☐ Other: _____

                                                  **(please specify)**

Sheriff Fee: $_____

                               _____
                               **(Serving Sheriff's Signature & Date)**

Instructions to Private Process:

1.   This Summons is effective for service only if served within 60 days after the date issued.
2.   Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3.   Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4.   If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



Circuit Court For Prince George's County
Clerk Of The Circuit Court
Courthouse
Upper Marlboro, Md. 20772-9987
MD Relay Service Voice/ TDD
1-800-735-2258

**Case No.:** CAL20-16029

**Other Reference No.(s):** .....................................

**Child Support Enforcement Number:** ......................................

**Date issued:** September 22, 2020

To: Elizabeth A. Hutson
2001 K Street NW, Suite 400
Washington, DC 20006

# WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this Court, to the attached complaint filed by;

AEREALE JENKINS
P.O. BOX 230
BRANDYWINE MD 20613

This summons is effective for service only if served within 60 days after the date it is issued.

*Mahasin El Umin*
Clerk of the Circuit Court

#216

To the person summoned:

Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.

Personal attendance in court on the day named is NOT required.

Proper Courtroom attire is expected. Anything that you would wear to an office that presents a professional appearance is appropriate. Please no shorts, cut-off jeans, halter, tank or tube tops or other attire that reveals the abdomen or lower back, spandex or mesh garments.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

CC-CV-032 (Rev. 01/2019)                    Page **1** of **14**                    CAL20-16029

# SHERIFF'S RETURN

Circuit Court for <u>Prince George's County</u>

To: ...............................................................

Sheriff fee: .................................. By: ...........................................................................

Served: .......................................................................................................................

Time: ............................ Date: ..........................................................................

Unserved (Reason): ....................................................................................................

With the following:

          ☐ Summons                     ☐ Counter Complaint
          ☐ Complaint                  ☐ Domestic Case Information Report
          ☐ Motions                      ☐ Financial Statement
          ☐ Petition and Show Cause Order    ☐ Other: _____

                                                      **(please specify)**

Was unable to serve because:

          ☐ Moved; left no forwarding address   ☐ No such address
          ☐ Address not in Jurisdiction         ☐ Other: _____

                                                      **(please specify)**

Sheriff Fee: $_____

                            _____
                              **(Serving Sheriff's Signature & Date)**

Instructions to Private Process:

1. This Summons is effective for service only if served within 60 days after the date issued.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



Circuit Court For Prince George's County
Clerk Of The Circuit Court
Courthouse
Upper Marlboro, Md. 20772-9987
MD Relay Service Voice/ TDD
1-800-735-2258

**Case No.:**  CAL20-16029

**Other Reference No.(s):**  .....................................

**Child Support Enforcement Number:**  .....................................

**Date issued:** September 22, 2020

To: Jonathan T. Blank
2001 K Street NW, Suite 400
Washington, DC 20006

# WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this Court, to the attached complaint filed by;

AEREALE JENKINS
P.O. BOX 230
BRANDYWINE MD 20613

This summons is effective for service only if served within 60 days after the date it is issued.

_Mahasin El Amin_
Clerk of the Circuit Court

#210

To the person summoned:

Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.

Personal attendance in court on the day named is NOT required.

Proper Courtroom attire is expected. Anything that you would wear to an office that presents a professional appearance is appropriate. Please no shorts, cut-off jeans, halter, tank or tube tops or other attire that reveals the abdomen or lower back, spandex or mesh garments.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued.

2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.

3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

CC-CV-032 (Rev. 01/2019)          Page 1 of 14          CAL20-16029

# SHERIFF'S RETURN

Circuit Court for <u>Prince George's County</u>

To:..................................................

Sheriff fee:...............................By:.................................................................

Served:...............................................................................................................

Time:...................Date:..................................................................................

Unserved (Reason):...........................................................................................

With the following:

    ☐ Summons                 ☐ Counter Complaint
    ☐ Complaint               ☐ Domestic Case Information Report
    ☐ Motions                 ☐ Financial Statement
    ☐ Petition and Show Cause Order   ☐ Other: _____
                                           **(please specify)**

Was unable to serve because:

    ☐ Moved; left no forwarding address   ☐ No such address
    ☐ Address not in Jurisdiction        ☐ Other: _____
                                           **(please specify)**

Sheriff Fee: $_____           _____

                                      **(Serving Sheriff's Signature & Date)**

Instructions to Private Process:

1. This Summons is effective for service only if served within 60 days after the date issued.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



Circuit Court For Prince George's County
Clerk Of The Circuit Court
Courthouse
Upper Marlboro, Md.  20772-9987
MD Relay Service Voice/ TDD
1-800-735-2258

Case No.:   CAL20-16029

Other Reference No.(s):   ...............................

Child Support Enforcement Number:   ...............................

Date issued:  September 22, 2020

To:   Katlyn Farrell
2001 K Street NW, Suite 400
Washington, DC 20006

# WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this Court, to the attached complaint filed by;

AEREALE JENKINS
P.O. BOX 230
BRANDYWINE MD 20613

This summons is effective for service only if served within 60 days after the date it is issued.

Mahasin Ct Amin
Clerk of the Circuit Court
# 2110

To the person summoned:

Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.

Personal attendance in court on the day named is NOT required.

Proper Courtroom attire is expected.  Anything that you would wear to an office that presents a professional appearance is appropriate.  Please no shorts, cut-off jeans, halter, tank or tube tops or other attire that reveals the abdomen or lower back, spandex or mesh garments.

Instructions for Service:

1.   This summons is effective for service only if served within 60 days after the date issued.
2.   Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3.   Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4.   If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

# SHERIFF'S RETURN

Circuit Court for <u>Prince George's County</u>

To:................................................

Sheriff fee:..................................By:.............................................................................

Served:.........................................................................................................................

Time:.......................Date:..............................................................................................

Unserved (Reason):........................................................................................................

With the following:

□ Summons                           □ Counter Complaint
□ Complaint                         □ Domestic Case Information Report
□ Motions                           □ Financial Statement
□ Petition and Show Cause Order     □ Other: _____
                                              **(please specify)**

Was unable to serve because:

□ Moved; left no forwarding address   □ No such address
□ Address not in Jurisdiction          □ Other: _____
                                                **(please specify)**

Sheriff Fee: $_____          _____
                                  **(Serving Sheriff's Signature & Date)**
Instructions to Private Process:

1.  This Summons is effective for service only if served within 60 days after the date issued.
2.  Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3.  Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4.  If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



Circuit Court For Prince George's County
Clerk Of The Circuit Court
Courthouse
Upper Marlboro, Md. 20772-9987
MD Relay Service Voice/ TDD
1-800-735-2258

**Case No.:** CAL20-16029

**Other Reference No.(s):** .....................................

**Child Support Enforcement Number:** .....................................

**Date issued:** September 22, 2020

To: Benjamin P. Abel
2001 K Street NW, Suite 400
Washington, DC 20006

# WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this Court, to the attached complaint filed by;

AEREALE JENKINS
P.O. BOX 230
BRANDYWINE MD 20613

This summons is effective for service only if served within 60 days after the date it is issued.

Clerk of the Circuit Court

To the person summoned:

    Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.

    Personal attendance in court on the day named is NOT required.

    Proper Courtroom attire is expected. Anything that you would wear to an office that presents a professional appearance is appropriate. Please no shorts, cut-off jeans, halter, tank or tube tops or other attire that reveals the abdomen or lower back, spandex or mesh garments.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).



# SHERIFF'S RETURN

Circuit Court for Prince George's County

To: ..........................................................

Sheriff fee: ...................................... By: ..........................................................................

Served: ..........................................................................................................................

Time: .......................... Date: ........................................................................................

Unserved (Reason): ..........................................................................................................

With the following:

☐ Summons                                    ☐ Counter Complaint
☐ Complaint                                   ☐ Domestic Case Information Report
☐ Motions                                     ☐ Financial Statement
☐ Petition and Show Cause Order               ☐ Other: _____
                                                      **(please specify)**

Was unable to serve because:

☐ Moved; left no forwarding address           ☐ No such address
☐ Address not in Jurisdiction                  ☐ Other: _____
                                                      **(please specify)**

Sheriff Fee: $_____

_____
**(Serving Sheriff's Signature & Date)**

Instructions to Private Process:

1.  This Summons is effective for service only if served within 60 days after the date issued.
2.  Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3.  Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4.  If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



Circuit Court For Prince George's County
Clerk Of The Circuit Court
Courthouse
Upper Marlboro, Md. 20772-9987
MD Relay Service Voice/ TDD
1-800-735-2258

**Case No.:** CAL20-16029

**Other Reference No.(s):** ....................................

**Child Support Enforcement Number:** ....................................

**Date issued:** September 22, 2020

To:  Cheryl Ross
3547 Spottswood Ave
Memphis, TN 38111

# WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this Court, to the attached complaint filed by;

<u>AEREALE JENKINS</u>
<u>P.O. BOX 230</u>
<u>BRANDYWINE MD 20613</u>

This summons is effective for service only if served within 60 days after the date it is issued.

_Mainasin El Umin_
Clerk of the Circuit Court
#212

To the person summoned:

Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.

Personal attendance in court on the day named is NOT required.

Proper Courtroom attire is expected. Anything that you would wear to an office that presents a professional appearance is appropriate. Please no shorts, cut-off jeans, halter, tank or tube tops or other attire that reveals the abdomen or lower back, spandex or mesh garments.

Instructions for Service:

1.  This summons is effective for service only if served within 60 days after the date issued.

2.  Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.

3.  Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

4.  If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

# SHERIFF'S RETURN

Circuit Court for <u>Prince George's County</u>

To:........................................................

Sheriff fee:................................By:.....................................................................

Served:.................................................................................................................

Time:......................Date:......................................................................................

Unserved (Reason):...............................................................................................

With the following:

| | |
|---|---|
| ☐ Summons | ☐ Counter Complaint |
| ☐ Complaint | ☐ Domestic Case Information Report |
| ☐ Motions | ☐ Financial Statement |
| ☐ Petition and Show Cause Order | ☐ Other: _____ |
| | **(please specify)** |

Was unable to serve because:

| | |
|---|---|
| ☐ Moved; left no forwarding address | ☐ No such address |
| ☐ Address not in Jurisdiction | ☐ Other: _____ |
| | **(please specify)** |

Sheriff Fee: $_____

_____
**(Serving Sheriff's Signature & Date)**

Instructions to Private Process:

1. This Summons is effective for service only if served within 60 days after the date issued.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

IN MARYLAND:

## THE CIRCUIT COURT FOR PRINCE GEORGE COUNTY

**AEREALE JENKINS** )
Private Individual )
PO Box 230 )   Civil Case No. *CAC 20-16029*
Brandywine, MD 20613 )
)
Plaintiff )
)
vs. )
)
**Kendra Ross (Daughter)** )
Private Individual )
782 Saxon Court )
Charlottesville, VA 22901 )
Ward of: )
Gillian Chadwick )
Washburn University School of Law )
1700 SW College Avenue )
Topeka, KS 66621 )
*and* )
MCGUIREWOODS LLP )
Elizabeth A. Hutson, Jonathan T. Blank, )
Katlyn Farrell, Benjamin P. Abel, )
2001 K Street NW, Suite 400 )
Washington, DC 20006 )
As her residence is under protection )
the above is being served on her behalf. )
)
**Cheryl Ross (Mother)** )
Private Individual )
3547 Spottswood Ave. ) )
Memphis, TN 38111 )
)
Defendant(s) )

## COMPLAINT
## BREACH OF CONTRACT AND MEMORANDUM OF AGREEMENT
## BY DEFENDANTS
## DEFAMATION, LIBEL, SLANDER, OR SIMILAR

Memorandum of Agreement under a contract and Legal Definition. A Memorandum of Agreement

("MOA"), also known as a memorandum of understanding, is a formal business document used to outline

an agreement made between two separate entities, groups or individuals.

I, AEREALE "last name of jenkins" am presenting multiple complaints against Kendra Ross and Cheryl Ross. Being a private individual and a member of the Community known as the United Nation of Islam at one time, and a member of the Value Creators at one time and member of the Promise Keepers set forth this claim of injury caused by Kendra Ross in her capacity as a private individual, and her birth parent (Mother), Cheryl Ross in her capacity as a private individual.

That under the agreed contract of each individual of the community that when anyone became a member of, they were informed of the guidelines and terms of the existing conditions to live in the community (Whether in a Full Time or Part Time capacity). Those who choose to stay and live in the community agreed to the terms of the contract, if you refuse or did not have the will to live by the terms of the contract, you would not be allowed in the community, those who were already a member of the community were free to leave, if at any point in time they were unable/wanted to be in the community or neglected the contract.

Members of our community were required to write and sign the community agreement, before entering.

Today you have similar in the Housing Association volunteer services for State and Federal Agencies.

Agenda 21 is one of several global plans of action designed to create a coalition of government, business, and non-governmental organizations (NGO's) under the auspices of the United Nations.  When fully operational, this system of Global Governance will command a One World Court, a One World Army, a One World Media, etc. all working in lock-step to gain total control over all human activity and all of the Earth's wealth.

Below are former living and work agreements made by those who choose to work and live within these communities in the United States and these communities were not called a "cult."  From the 1900 up until the early 1950's many workers/employees, especially those in the mining and logging industry, were paid in a form of currency issued by their employer known as company scrip.


### Example similar agreement

Company scrip is scrip (a substitute for government-issued legal tender or currency)

Lumber company scrip in Wisconsin, for example, forest-products and lumber companies were specifically exempted from the state law requiring employers to pay workers' wages in cash. Lumber and timber companies frequently paid their workers in scrip, which was redeemable at the company store. Company-run stores served as a convenience for workers and their families, but also allowed the companies to recapture some of their labor expenses. In certain cases, employers included contract provisions requiring employees to patronize the company stores. Employees who wanted to change their scrip to cash generally had to do so at a discount.

Coal scrip is "tokens or paper with a monetary value issued to workers as an advance on wages by the coal company or its designated representative". As such, coal scrip could only be used at the specific locality or coal town of the company named. Because coal scrip was used in the context of a coal town, where there are usually no other retail establishments in that specific remote location, employees who used this could only redeem their value at that specific location

Gamification describes the incentivisation of people's engagement in non-game contexts and activities by using game-style mechanics. Gamification leverages people's natural tendencies for competition, achievement, collaboration, and charity. Tools employed in game design, such as rewarding users for achievements, "leveling-up," and earning badges, are carried into the real world to help motivate individuals to achieve their goals or boost performance.

There are many examples of gamification, the most well-known perhaps being frequent flyer rewards programs offered by airlines. The important measurable metrics of success from gamification include the level of engagement, influence, brand loyalty, time spent on an activity, and the game's ability to go viral.

Homeowners' Association Sample Rules A written contract of a group of property owners, typically condominium owners, describing their joint ownership obligations and rights. The association agreement usually allows members to approve new owners before a sale, and gives the right to charge each resident for agreed upon building operating expenses.

In the United States, a homeowner association (or homeowners' association, abbreviated HOA, sometimes referred to as a property owners' association or POA) is a private association often formed by a real estate developer for the purpose of marketing, managing, and selling homes and lots in a residential subdivision. Typically the developer will transfer control of the association to the homeowners after selling a predetermined number of lots. Generally any person who wants to buy a residence within the area of a homeowners association must become a member, and therefore must obey the governing documents including Articles of Incorporation, CC&Rs (Covenants, Conditions and Restrictions) and By-Laws, which may limit the owner's

A cooperative agreement is a legal agreement between the federal government and any other entity. A cooperative agreement occurs when the federal government transfers something of value, usually money, to a state government, municipality or private company for a public purpose. In a cooperative agreement, substantial interaction goes on between the federal government and the other party.

### 31 U.S. Code § 6305. Using cooperative agreements

An executive agency shall use a cooperative agreement as the legal instrument reflecting a relationship between the United States Government and a State, a local government, or other recipient when—
**(1)** the principal purpose of the relationship is to transfer a thing of value to the State, local government, or other recipient to carry out a public purpose of support or stimulation authorized by a law of the United States instead of acquiring (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government; and
**(2)** substantial involvement is expected between the executive agency and the State, local government, or other recipient when carrying out the activity contemplated in the agreement.

### LEGAL DEFINITION OF A VOLUNTEER

### 29 CFR § 553.101 - "Volunteer" defined.
**(a)** An individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered, is considered to be

a volunteer during such hours. Individuals performing hours of service for such a public agency will be considered volunteers for the time so spent and not subject to sections 6, 7, and 11 of the FLSA when such hours of service are performed in accord with sections 3(e)(4) (A) and (B) of the FLSA and the guidelines in this subpart.

**(b)** Congress did not intend to discourage or impede volunteer activities undertaken for civic, charitable, or humanitarian purposes, but expressed its wish to prevent any manipulation or abuse of minimum wage or overtime requirements through coercion or undue pressure upon individuals to "volunteer" their services.

**(c)** Individuals shall be considered volunteers only where their services are offered freely and without pressure or coercion, direct or implied, from an employer.

**(d)** An individual shall not be considered a volunteer if the individual is otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer.

**29 CFR § 553.100 General.**
Section 3(e) of the Fair Labor Standards Act, as amended in 1985, provides that individuals performing volunteer services for units of State and local governments will not be regarded as "employees" under the statute. The purpose of this subpart is to define the circumstances under which individuals may perform hours of volunteer service for units of State and local governments without being considered to be their employees during such hours for purposes of the FLSA.

**BARTERING/PAYMENT IN KIND**

Bartering and "Payment in Kind" are two systems that date as far back as 6000 B.C. Bartering is the exchange of goods or services for other goods or services without the use of money. Payment in Kind is the use of goods or services instead of cash. Payment-in-kind also refers to a financial instrument that pays interest or dividends to investors of bonds, notes, or preferred stock with additional securities or equity instead of cash. "Payment in Kind", and bartering are two successful systems because both parties are aware upfront of the method of pay and or exchange. Similar in this case with Cheryl Ross and Kendra Ross. All parties are aware of the agreement upfront and therefore made the agreement to volunteer services while being provided a safe place to grow and learn all while their physical needs were met.

**THE MEMORANDUM OF AGREEMENT**

When Cheryl Ross and her minor children which includes Kendra Ross (and others) came to the community known as the United Nation of Islam in the year of 1995 when it was under the control of Royall "last name of Jenkins", Cheryl Ross had to go through a training course to ensure she was aware of what she was agreeing to.

The contract agreement, if Cheryl Ross agreed to work in the community, she would receive the following for her and her children: housing, medical, food, schooling for her children including her Daughter Kendra Ross, to have training for job skills in other communities that could be in other States if they choose to be part of the community.

This agreement was violated once Kendra Ross left the community and became of age over that of a minor of 18 years of age that Cheryl Ross agreed to when Kendra Ross was still a minor under the jurisdiction and control of her mother.

Again, Kendra Ross returned back to the community of the United Nation of Islam once she was of legal age, of her own free will and married within the community and then decided to again to return to the outside system outside of the community. This is called free will.

A brief history of the United Nation of Islam under the guidance of Royall "last name of jenkins" at the time Kendra Ross was a minor which is when all of her alleged claims have occurred against this community.

Since 2010-2012 the United Nation of Islam has gone through troubled waters of being hi-jacked by members (Akiba and Kaaba Majeed, Henry Munoz, Yunus Rassoull and Attorney Wayman W. Favors) who indentified the cash value of this community. This community was taken over, and then left to perish until the original members returned to reclaim what remained after the pillaging of the UNOI.

Kendra Ross' actions in 2017 were long after being out of the community (UNOI) and still under the memorandum of agreement/contract to which she has received the benefits of while as a minor under Mother Cheryl Ross' jurisdiction.

Kendra Ross was never a member of the Value Creators or that of the Promise Keepers. But by her action of claiming human trafficking and labor claims against the United Nation of Islam is a contract violation to the agreement of being a member.

The same memorandum of agreement/contract are the same with the Value Creators and Promise Keepers.

The suit against the communities/people has caused irreparable damage against these communities/people.

The people of these communities have lost the right to work in the community, schooling, medical treatment from the community, food, housing etc.

## INTRODUCTION

1. Defamation, Libel and Slander remains a shockingly prevalent practice throughout the world and it has become an epidemic in the United States.
   a. False accusations circulate worldwide with blinding speed through internet social media via all types of electronic devices: TV's, phones, tablets etc which causes a person or their business entities to lose public trust in them and/or their products and services.
   b. Slander victimizes vulnerable persons by defrauding and forcing them to close businesses, change names, relocate, lose sales and gainful employment.
2. I, AEREALE "last name Jenkins" the plaintiff knows this first hand.

a. From 1996 until it's unauthorized decommission on December 31st, 2012 (executed by the criminal activities of UNOI Officers Akiba and Kaaba Majeed, Henry Munoz, Yunus Rassoull and Attorney Wayman W. Favors) I accepted membership with the organization named the United Nation of Islam with the understanding that any goods, services or time invested that were rendered from my fleshly being would be donated (whether monetary or physical goods) on a volunteer basis.

3. As Defendant(s) Kendra and Cheryl Ross (Mother and Daughter) were and are completely aware of the fact that there were clear steps and information for every potential member;

   a. this procedure was called "processing" in the United Nation of Islam which generally consisted of attending three public meetings and,

   b. then being asked if you'd like to move forward with orientation classes,

   c. The processing member then wrote a savior's letter (a written contract/agreement) which was the standard for all UNOI Members that were of the age of majority (18 years) and, then in turn, mailed it to UNOI HQ's for approval.

      • A sample of this UNOI contract/agreement is enclosed and labeled as 'Evidence A' [Exhibit A].

4. As President George Washington stated; "To speak evil of any one, unless there is unequivocal proof of their deserving it, is an injury for which there is no adequate reparation."

   a. Fortunately, the state and federal laws prohibit this contemptible practice such as 2017 KANSAS Statute Article 24. - REGULATION OF CERTAIN TRADE PRACTICES 40-2404. Unfair methods of competition or unfair and deceptive acts or practices; title insurance agents, requirements; disclosure of nonpublic personal information; rules and regulations.

   b. Along with federal law 28 U.S. Code § 4101. Definitions: The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person.

5. I, AEREALE "last name Jenkins" boldly and bravely return to this jurisdiction – the epicenter of Kendra Ross's initial breach of contract and DEFAMATION and SLANDEROUS deception – and bring this action to enforce anti-breach of contract and defamation under federal and state laws.

6. In KENDRA ROSS' original "Verified Complaint" (USDC of Kansas # 2:17-cv-02547-DDC-TJJ refer to 'Evidence B' [Exhibit B]) Kendra Ross specifically names The UNOI; as a "Defendant" and not the residents of the community of the state of Kansas and subsequently harassed me and my family for two and a half years (and counting) with hundreds of *false* claim court documents and,

"On September 15, 2017, plaintiff Kendra Ross filed a Complaint against Royall Jenkins, The Value Creators, Inc. (f/k/a The United Nation of Islam, Inc.), The Value Creators LLC, and The Value Creators, Inc. Doc. 1. The Complaint asserts 16 federal and state law claims.2 The federal claims include violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1589, 1590, and 1595, for **human trafficking and forced labor**; the FairLabor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, for **unpaid wages**; and the **Racketeer Influenced and Corrupt Organizations Act** ("RICO"), 18 U.S.C. § 1961. Three groups of claims comprise the state law claims: **(1) violations of human trafficking laws; (2) violations of minimum wage laws; and (3) violations of Kansas tort and quasi-contract law**. Plaintiff asserted that defendants have violated **Kansas, New York, New Jersey, and Ohio human trafficking laws**. Plaintiff also claimed that defendants have violated minimum wages laws for those same states. Finally, plaintiff alleged that defendants have violated Kansas laws for conversion, unjust enrichment, and both intentional and negligent infliction of emotional distress. On May 23, 2018, the court entered default judgment against defendants Royall Jenkins, The Value Creators, Inc. f/k/a The United Nation of Islam, Inc., The Value Creators LLC, and The Value Creators, Inc (the "Judgment Debtors"). *See* Doc. 41."

7.      KENDRA ROSS and CHERYL ROSS both knew after at least 15 years of participation and membership with the UNOI that all of the abovementioned statements are false and a complete breach of contract.

## I BEING THE PLAINTIFF IN THIS ACTION HAS LOST THE FOLLOWING:
## DAMAGES:

**First Point of Order**

### MEDICAL AND SCHOOLING:

1. Given the recent complaints and false accusations of Human trafficking, Sex scandal, Cult etc.

2. Given by Kendra Ross, her Attorney's and (mother) Cheryl Ross, has resulted in an injustice and breach of contract in our community.

3. The accusation that Kendra Ross presented is completely inhuman and has jeopardized the future of many families, mine included, and the overall health and stability of our community.

4. She damaged the trust that we had with the State, City and County.

5. She completely stripped us of the opportunity to rebuild the damaged areas in our community after we were hi-jacked, before the time of the Value Creators and during the time of the United Nation of Islam (UNOI).

6. Because of Kendra Ross's lawsuit, we no longer receive medical, schooling or a classroom to develop our future entrepreneur skills, meaning, among others Our Community took pride in our Medical and educational system, which was no cost to our families including hers.

7. It required no Money/Federal reserve notes to receive proper care and schooling.

8. Because of her lawsuit and False/manufactured accusations, she has put many of us, myself included, in a position to seek medical elsewhere and schooling.

9. Costing us money that we do not have and placing us in a system we are unfamiliar with, In order for us to continue schooling we have to pay high sums of money to continue our entrepreneur/creative skills, in college and or other schooling facilities other than our own.

10. In order to continue receiving the proper medical care, we also have to pay high sums of money for basic treatment, whereas receiving it from our own community.

**Second Point of Order**

**Proper Housing**:

11. After the UNOI was hi-jacked, we were forced to find jobs and housing.

12. When our community finally reached a point to rebuild from the damages, Kendra Ross falsely represented the nature of our community, causing mental and physical strain and stress to myself, my family and also the families of our community.

13. It has become almost impossible to find the proper housing, the majority of the applications I apply for are turned down.

14. Along with others, my face and name is specifically connected to the Value Creators and,

15. Because the human trafficking lawsuit against the Value creators from Kendra Ross is accessible through research, I have not been able to find adequate housing, and at one point me and my family being homeless.

**Third Point of Order**

**Financial Damage**:

16. Due to Kendra Ross and her Attorney's my family and I have experienced food, clothing, shelter and financial depletion.

17. Because of Kendra Ross and her Attorney's attempt to legitimize their false accusations and made up claims against Royall "last name of Jenkins" it has caused a tremendous decrease in customers and finances to the point where we can no longer support our families/children sufficiently.

18. Our properties and Bank accounts have been seized.

19. Company's/franchises are NOT willing to accept our products (Teas, Salad dressing, coffee, sauces etc.)  Because they are produced by Value Creators or The Promise Keepers.

**Fourth Point of Order**

**Defamation of Character, Profiling/Slander**:

20. I am stating Kendra Ross' Defamation of character and Slander to myself, my family, and our community is not limited to Royall "last name of jenkins".

21. The lawsuit describes Royall "last name of jenkins" and the UNOI (Value Creators and Promise Keepers), as being Human traffickers, misuse of child laborers and labeled as an occult etc.

22. In which none of that is the Truth, Kendra Ross and her Attorneys have never been in the Value Creators or The Promise Keepers.

23. This affects me directly because being a part of the Jenkins biological family, the Slander and harassment I receive personally and professionally from customers and social media is all from this lawsuit false and misleading allegations.

24. People are speaking to me as if I and my family are trapped in the basement or being held against our will which is NOT true.

25. Being referred to as a cult or a human trafficking organization is very disheartening and dehumanizing our community and my character.

26. Due to Kendra Ross's lawsuit it has caused significant drops in sales, and walk-in traffic, business in our restaurant.

27. Thus, making it hard for myself, my family and our community members to support our families.

28. People under similar circumstances as myself have been affected.

29. Due to the breach of the agreement, agreed upon by Cheryl Ross which covered herself and Kendra Ross as the minor child, as Cheryl Ross was her guardian, Kendra Ross came under the same agreement until she reached adult age.

30. We lost businesses in Baltimore, MD, New Haven, CT, Chicago, IL, Kansas City, KS and Atlanta, GA which consisted of restaurants/catering, bakery, trucking, construction and food product wholesaling.

31. Loss of Bank Accounts: Bank of America shutdown our business accounts and funds were frozen and seized from the Value Creators.

32. Wells Fargo froze our business accounts of the Value Creators.

33. Lost revenue and potential revenue from Royall's Finest Coffee due to the slanderous statements made by Kendra Ross in her filing of August 17th, 2017 "VERIFIED COMPLAINT" in the UNITED STATES DISTRICT COURT – a photo of the product sample is enclosed and labeled as 'Evidence B' [Exhibit B].

34. Lost revenue and potential revenue from Royall Essence tea beverage due to the slanderous statements made by Kendra Ross in her filing of August 17th, 2017 "VERIFIED COMPLAINT" in the UNITED STATES DISTRICT COURT – a photo of the product sample is enclosed and labeled as 'Evidence C' [Exhibit C].

35. Lost revenue and potential revenue from Royall Dressing salad dressing due to the slanderous statements made by Kendra Ross in her filing of August 17th, 2017 "VERIFIED COMPLAINT" in the UNITED STATES DISTRICT COURT – a photo of the product sample is enclosed and labeled as 'Evidence D' [Exhibit D].

36. Lost revenue and potential revenue from the Royall Touch eatery located in Kansas City, KS due to the slanderous statements made by Kendra Ross in her filing on August 17th, 2017 "VERIFIED COMPLAINT" in the UNITED STATES DISTRICT COURT – business documents are enclosed and labeled as 'Evidence E' [Exhibit E].

37. Lost revenue and potential revenue from the Supreme Eatery cafeteria/catering business in Baltimore, MD due to the slanderous statements made by Kendra Ross in her filing on August 17th, 2017 "VERIFIED COMPLAINT" in the UNITED STATES DISTRICT COURT – photos of the business and business documents are enclosed and labeled as 'Evidence F' [Exhibit F].

## CONCLUSION

Cheryl Ross had sole power, authority and jurisdiction over Kendra Ross during the time frames when the fraudulent human trafficking and labor claim against Royall "last name of jenkins" / United Nation of Islam was made against all three of these communities. Cheryl and Kendra Ross both knew that members of the United Nation of Islam DID NOT receive any form of payment as established in "Title 18 U.S. Code § 8.Obligation or other security of the United States defined":

> The term "obligation or other security of the United States" includes all bonds, certificates of indebtedness, national bank currency, Federal Reserve notes, Federal Reserve bank notes, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, certificates of deposit, bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, issued under any Act of Congress, and canceled United States stamps.

In the simplest of terms; Cheryl and Kendra Ross both knew and understood that "Full Time" members of the United Nation of Islam received: FOOD, CLOTHING, SHELTER, EDUCATION, COMMUNICATION, MEDICAL and TRANSPORTATION in an organized and systematic fashion in EXCHANGE for the VOLUNTEER services that were rendered from each mentally competent and able bodied fleshly being (member) in the United Nation of Islam. There were no tricks or ploys in this contractual agreement and this was known and clear, upfront.

As a result of the Defendants' conduct, I, AEREALE "last name jenkins" have suffered significant emotional pain and suffering, for which I should compensated in the amount of $1,740,000, or any other amount to be determined at trial.

WHEREFORE, I, AEREALE "last name Jenkins" respectfully requests that this Court enter judgment against the Defendants on the damages listed above and award me at least $1,740,000, plus prejudgment interest and all attorney's fees incurred in prosecuting this action.

## JURY TRIAL DEMAND

I, Aereale "last name Jenkins" hereby demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, I, Aereale "last name Jenkins" the Plaintiff respectfully demand judgment in my favor and against Defendants Cheryl Ross and Kendra Ross as follows:

(1) Compensatory and special damages in an amount to be proven at trial;

(2) Lost wages, including income from business product investments causing product name changes, lost bank account, credit damage, evictions, vehicle repossession and businesses closed in an amount to be proven at trial;

(3) Statutory penalties of $1,714,000 and liquidated damages.

(4) Punitive and exemplary damages in an amount according to proof at the time of trial;

(5) Reasonable attorney's fees and costs; and

(6) Such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____Date 9/14/2020

Aereale "last name of Jenkins"
Private Individual
PO Box 230
Brandywine, MD 20613

# AFFIDAVIT OF FACT

I, AEREALE ``last name jenkins'', am the plaintiff in the above-captioned action. I am and have been a resident and Citizen of one of the states for the United states since my birth. I am Twenty Four (24) years of age and am of sound mind and body to make this affidavit of fact. I have read the foregoing Complaint and fully understand the factual allegations, and also understand the legal claims I am asserting in this action. I verify under penalty of perjury that the entire foregoing claim is true and correct to the best of my ability.

Date: September 14th, 2020 at 1:47 pm cst,

AFFIANT SIGNATURE:

Aereale Jenkins_____
PRINTED FULL LEGAL NAME:

NOTARY SIGNATURE:                                                   SEAL:

Lynneice S. Gamble_____
NOTARY PRINTED FULL LEGAL NAME:

```
LYNNEICE GAMBLE
Notary Public - State of Maryland
Prince George's County
My Commission Expires Sep 27, 2020
```

Acknowledgement:

STATE OF MARYLAND_____COUNTY OF PRINCE GEORGE'S COUNTY_____

The foregoing instrument was acknowledged before me this 14th day of September, 2020 by Aereale Jenkins who is personally known to me or who has produced a valid state government identification card.

SCANNED

# EVIDENCE A
# (EXHIBIT A)

Date
Address
City, State and Zip Code
Area Code and Telephone Number


The Deliverer
Brother Solomon
United Nation of Islam
7124 Temple Hills Road
Suite # 137
Padgetts Corner
Camp Springs, Maryland  20748


Dear Saviour Allah The Deliverer:
I am in agreement with the wisdom
I hear coming from you. I would
like to reclaim my own and be
with you. I bear witness that there
is no God other than Allah and that
The Honorable Elijah Muhammad is
Thy Last Messenger and Servant. I
pray you accept me and give me
my Original name. My slave name
is as follows:

# EVIDENCE B
# (EXHIBIT B)

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Kansas

| | | |
|---|---|---|
| Kendra Ross | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | Civil Action No. 2:17-cv-02547-DDC-TJJ |
| v. | ) | |
| | ) | |
| Royall Jenkins, and | ) | |
| The Value Creators, Inc. f/k/a The United Nation of | ) | |
| Islam, Inc., and The Value Creators LLC, | ) | |
| and The Value Creators Inc. | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

> The Value Creators LLC
> 2111 North 10th Street
> Kansas City, Kansas 66104
>
> Serve: Mr. Gregory Moten, Registered Agent
> 1121 Quindaro Boulevard, Kansas City, Kansas 66104

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Gillian Chadwick
> Washburn Law Clinic
> Washburn University School of Law
> Topeka, Kansas 66621

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: _____09/18/2017_____    _____
                              *Signature of Clerk or Deputy Clerk*

TIMOTHY M. O'BRIEN
CLERK OF COURT
259 Robert J. Dole U.S. Courthouse
500 State Ave
Kansas City KS 66101-2431

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 2:17-cv-02547-DDC-TJJ

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                          *Server's signature*

                                              _____
                                                          *Printed name and title*

                                              _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
### Kansas City Division

KENDRA ROSS,

      *Plaintiff,*

     v.

ROYALL JENKINS,
1735 West Avenida De Amelia
Sahuarita, Arizona 85629,

    **Serve:** Mr. Royall Jenkins
          1735 West Avenida De Amelia
          Sahuarita, Arizona 85629,

*and*

THE VALUE CREATORS, INC.
f/k/a THE UNITED NATION OF ISLAM, INC.,
1121 Quindaro Boulevard
Kansas City, Kansas 66104,

    **Serve:** Mr. Griegory Moten
          Registered Agent
          1121 Quindaro Boulevard
          Kansas City, Kansas 66104,

*and*

THE VALUE CREATORS LLC,
2111 North 10th Street
Kansas City, Kansas 66104

    **Serve:** Mr. Griegory Moten
          Registered Agent
          1121 Quindaro Boulevard
          Kansas City, Kansas 66104,

*and*

THE VALUE CREATORS INC.,
2111 North 10th Street

Case No. _____

**JURY TRIAL DEMANDED**

1

Kansas City, Kansas 66104

    **Serve:** Mr. Griegory Moten
            Registered Agent
            1121 Quindaro Boulevard
            Kansas City, Kansas 66104,

            *Defendants.*

## VERIFIED COMPLAINT

Plaintiff Kendra Ross ("Ms. Ross"), by counsel and pursuant to Rule 3 of the Federal Rules of Civil Procedure, respectfully files this verified complaint ("Complaint") against Defendants Royall Jenkins ("Jenkins") and his organized business entities, Defendants The Value Creators, Inc. f/k/a The United Nation of Islam, Inc. ("UNOI"), The Value Creators LLC, and The Value Creators Inc. (all defendants collectively referenced herein as the "Defendants"). By this action, Ms. Ross seeks to recover compensation for the Defendants' trafficking with respect to forced labor and related unlawful activities, as well as to punish Defendants for their wrongful, immoral, and pernicious human trafficking in violation of numerous federal and state laws. For her Complaint, Ms. Ross states as follows:

### INTRODUCTION

1.      Human trafficking remains a shockingly prevalent practice throughout the world, and it has become an epidemic in the United States. Human trafficking victimizes vulnerable persons by forcing, defrauding, or otherwise coercing them into sexual or labor exploitation.

2.      Plaintiff Kendra Ross knows this first hand. From at least the time she was eleven years old until her escape ten years later, Defendant Royall Jenkins and other individuals under

2

his command in a cult – known then as the United Nation of Islam – trafficked her.[1] Jenkins, the self-proclaimed "Spiritual Head" of UNOI, intentionally separated Ms. Ross from her family and friends at a young age, and transported her around the eastern United States to forcibly work at Jenkins' different businesses. Jenkins also coerced and commanded Ms. Ross to perform around-the-clock childcare for his immediate family, extended family, and friends, as well as for other prominent leaders within the cult. The Defendants *never* paid Ms. Ross for *any* of her hard labor, deprived her of an education that would permit her to become a productive member of mainstream American society, and subjected her to years of intimidation and psychological abuse to prevent her escape from the cult. The Defendants' actions forced Ms. Ross into involuntary servitude, and denied her fundamental rights of freedom, education, basic medical attention, and fair pay.

3.     Fortunately, the federal and state laws and policies prohibiting this vile practice of human trafficking are alive and well. Former President Bush has called human trafficking "one of the worst offenses against human dignity," and former President Obama has noted that "[o]ur fight against human trafficking is one of the great human rights causes of our time[.]" Congress has also recognized the countless human tragedies caused by human trafficking. In 2003, it expanded the Trafficking Victims Protection Act[2] by granting survivors of human trafficking a private right of action to hold their former captors accountable, and to equip them with a legal remedy to compensate them for the abuses they suffered.

4.     Ms. Ross now bravely returns to this jurisdiction – the epicenter of her trafficking

---

[1]     As noted below, UNOI is distinct from the more widely known organization of the Nation of Islam, which is based in Chicago, Illinois, and has been led by Dr. Louis Farrakhan since 1977.

[2]     In 2008, Congress renamed The Trafficking Victims Protection Act as the Trafficking Victims Protection Reauthorization Act ("TVPRA").

– and brings this action to enforce anti-trafficking federal and state laws. Through this suit, Ms. Ross seeks the fair compensation owed to her by Jenkins and the other Defendants, to redress the egregious violations of Ms. Ross's basic human and civil rights, and to punish the Defendants for their appalling acts. This Court should bring Jenkins and his companies to justice and hold them all accountable and liable for their trafficking of Ms. Ross.

PARTIES

5.      Plaintiff Kendra Ross is a 26-year-old who, since 2013, resides in and is a citizen of a state other than the states of Arizona, Kansas, Connecticut, Maryland, and Delaware. She began living in a safe house in April 2015 to avoid detection by her former traffickers.[3]

6.      Defendant Royall Jenkins is currently a resident and citizen of the State of Arizona. During all times relevant to the events that form the basis of this Complaint, however, Jenkins primarily resided in Kansas City, Kansas. Jenkins' conduct that forms the basis of his personal liability to Ms. Ross (including, but not limited to, his actions related to trafficking Ms. Ross throughout the United States and his personal financial benefit from Mr. Ross' unpaid labor) primarily occurred in Kansas City, Kansas.[4]

7.      Jenkins and others incorporated The United Nation of Islam, Inc., in Delaware on or around June 1993. UNOI's date of formation in Kansas was on or around September 2, 1997. On or around July 31, 2015, The United Nation of Islam, Inc., formally changed its name in Kansas to The Value Creators, Inc. UNOI is a Delaware corporation and it maintained its principal place of business at 1608 North 13th Street, Kansas City, Kansas, at all times relevant

---

[3]      For this reason, Ms. Ross does not allege in this Complaint where she is a citizen other than that she is not a citizen of the states of Arizona, Kansas, Connecticut, Maryland, and Delaware.

[4]      Jenkins publishes a website that contains his writings, philosophies, and directives as "Allah in Person." That website is located at http://www.thephoenixtherisingoflife.com.

4

during this lawsuit. Defendant The Value Creators, Inc. f/k/a The United Nation of Islam, Inc., therefore, is a citizen of the States of Delaware and Kansas. The conduct that forms the basis of UNOI's liability to Ms. Ross (including, but not limited to, its decisions to traffic Ms. Ross throughout the United States to perform unpaid work at its affiliated businesses) primarily occurred in Kansas City, Kansas. At all times relevant to this lawsuit, Jenkins has been the business leader and "Spiritual Head" of UNOI.

8.    Jenkins and others organized Defendant The Value Creators LLC in the State of Maryland on or around November 7, 2014. At the time of organization, and presumably continuing to date, The Value Creators LLC has had at least three members: Defendant Jenkins, Mr. Ephriam Woods, and Mr. William Green. At all relevant times, Mr. Woods has been a resident of the State of Kansas, and Mr. Green has been a resident of the State of Connecticut. The principal place of business of The Value Creators LLC is 2111 North 10th Street, Kansas City, Kansas 66104. Accordingly, The Value Creators LLC is a citizen of the States of Maryland, Kansas, and Connecticut. The Value Creators LLC holds itself out as a business whose nature and character is the "opening of eateries, sales and development of health restorative products, transportation, educational, life coaching, agricultural, con[s]truction, clothing and community development."

9.    Jenkins and others incorporated Defendant The Value Creators Inc. in Kansas on or around April 16, 2015. The Value Creators Inc. maintains its principal place of business at 1121 Quindaro Boulevard, Kansas City, Kansas 66104. Accordingly, Defendant The Value Creators Inc. is a citizen of the State of Kansas. The Value Creators Inc. holds itself out as a business whose nature and character is the "educational development, business development, health and wellness, transportation, admin[istration] and finance and housing."

10.     In this Complaint, all three business-entity Defendants are collectively referred to as "The Value Creators". Generally, The Value Creators include the successor organizations to UNOI (the organization responsible for trafficking Ms. Ross), and they own the personal, real and intellectual property, as well as other assets. These assets were employed in the trafficking scheme that subjugated Ms. Ross for a decade of her youth. All named Defendants directly and knowingly benefitted, financially and otherwise, from trafficking Ms. Ross. Upon information and belief, Jenkins and other leaders of The Value Creator entities organized The Value Creators LLC in November 2014 and The Value Creators in April 2015 in order to shield UNOI's assets from legal action against UNOI.[5]

11.     The three business entities referred to as The Value Creators may not be the only business entities that benefitted from, or are liable for, the trafficking of Ms. Ross. As such, Ms. Ross reserves the right to join additional defendants as discovery may reveal.

## JURISDICTION AND VENUE

12.     This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Trafficking Victims Protection Reauthorization Act (18 U.S.C. §§ 1589 *et. seq.*), the Fair Labor Standards Act (29 U.S.C. §§ 201 *et. seq.*), and the Racketeer Influences and Corrupt Organizations Act (18 U.S.C. §§ 1961 *et seq.*).

13.     This Court also has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between Ms. Ross (not a citizen of the states of Arizona, Kansas, Connecticut, Maryland, and Delaware), on the one hand, and each of the Defendants (citizens of the states of Arizona, Kansas, Connecticut, Maryland, and Delaware) on the other, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

---

[5]     The Value Creators' website, which contains the organization's core doctrines and messages to its devotees, is located online at http://www.thevaluecreators.org.

14.     This Court has supplemental jurisdiction over all asserted state law claims pursuant to 28 U.S.C. § 1367 because all state law claims are so related to, and arise from, the same common nucleus of operative facts from which the federal claims arise and, therefore, they form part of the same case or controversy under Article III of the United States Constitution.

15.     This Court has personal jurisdiction over each of the Defendants pursuant to KAN. STAT. ANN. § 50-638, and the exercise of personal jurisdiction over each of the Defendants is consistent with due process.

16.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) because a substantial part of the events and omissions giving rise to the claims occurred in this District.

STATEMENT OF FACTS

I.     Royall Jenkins and the United Nation of Islam.

A.     Royall Jenkins.

17.     Prior to 1978, Jenkins was a member of the Nation of Islam under the leadership of Elijah Muhammad. Dr. Louis Farrakhan assumed the leadership of the Nation of Islam upon the death of Elijah Muhammad in 1978.

18.     Jenkins claims that, around the time of Elijah Muhammad's death, angels and/or scientists abducted him, escorted him through the galaxy in a spaceship, informed him that he was "The Supreme Being", and instructed him how to govern Earth.

19.     Upon his "return" to Earth, Jenkins split from Nation of Islam in 1978 and informally organized UNOI as a radical alternative to Dr. Farrakhan's Nation of Islam. Since that time, Jenkins has commanded that his UNOI followers refer to him as "Allah on Earth," "Allah in Person," or "The Supreme Being."

20.     Sometime in or after 1996, Jenkins founded "Heaven," which was a UNOI model

7

community in an economically depressed neighborhood of Kansas City, Kansas. Jenkins later established additional UNOI communities across the United States, in, among other locations, Atlanta, Georgia; Dayton, Ohio; Newark, New Jersey; Harlem, New York; Temple Hills, Maryland; Mobile, Alabama; and Cincinnati, Ohio. Upon information and belief, The Value Creators owns the personal, real, and intellectual property used by these communities in the nation-wide trafficking scheme at issue in this case.

21.    Jenkins has a large immediate family scattered around the United States. He has had at least thirteen (13) wives,[6] and has fathered approximately twenty (20) children (collectively referenced in herein as the "Royall Family"). Jenkins refers to at least some of his wives as "concubines." Members of the Royall Family reside in different locations across the United States.

22.    During times relevant to the events that form the basis of this action, Jenkins owned several houses on one particular street in Kansas City, Kansas, where his wives, children, and grandchildren lived. Also during times relevant to the events that form the basis of this Complaint, Jenkins owned a house called the "House of Peace" in Kansas City, Kansas. The "House of Peace" is in a secret location, only accessible by Jenkins and a few select people.

23.    Jenkins holds ownership interests in several businesses, including all three business entities collectively referred to herein as The Value Creators. Jenkins and the rest of the Royall Family have directly benefitted financially from the revenues of these businesses, in large part because the businesses employ trafficked laborers who are not paid any wages for the work they perform for those businesses.

24.    In addition, Jenkins and the rest of the Royall Family have directly benefitted

---

[6]    UNOI instructs its male followers that "you can measure a man's wisdom by the number of wives he has."

8

financially from the trafficked laborers who are not paid any wages for the around-the-clock child care and housekeeping work they perform for Jenkins and his Royall Family.

25.     During all times relevant to the events that form the basis of this Complaint, Jenkins was the business and spiritual leader of UNOI, head of the Royall Family, and personally made all decisions regarding the trafficked laborers which benefitted himself, UNOI, and the Royall Family.

B.     The United Nation of Islam.

1.     Organization.

26.     Jenkins founded UNOI in or around 1978. Since UNOI's founding, Jenkins has been the business and self-proclaimed "Spiritual Head" of UNOI.

27.     UNOI (and possibly other corporate entities) operated as the corporate entity for Jenkins' cult at all times relevant to Ms. Ross' trafficking.

28.     UNOI employed a hierarchical chain of command, starting with Local Secretaries, who reported to the National Secretary, who reported to Officers, who reported to Captains, who reported to Lieutenants, who reported to the National Lieutenant, who reported to Jenkins. Everyone in the chain of command ultimately reported to Jenkins. Jenkins approved almost everything, if not everything, that happened in "his Nation."

29.     At all times relevant to this lawsuit, the top heads of UNOI included, but were not limited to, Kaaba Majeed (National Lieutenant for men), Etenia Kinard (National Lieutenant for women), James/Adam Winthrop (National Secretary for men),[7] Ayesha Mohammed (National Secretary for women), Yanus Rassoull, Joseph F. Kelly, and Lamira/Kareemallah Jenkins.

30.     At all times relevant to this lawsuit, UNOI divided its membership into two

---

[7]     Jenkins regularly changed the names of cult members without their permission or input. James/Adam Winthrop is one example.

9

groups: (1) "part time" followers, who have a life or job outside of UNOI community; and (2) "full time" followers, who work for UNOI, live in homes owned and operated by UNOI, and only interact with other UNOI followers. "Full time" followers were afforded a more respected status and were fully included in all UNOI activities, and UNOI heads put followers on "part time" status as a form of punishment. "Part time" followers were subjected to full-body searches before they were permitted to enter UNOI meetings. Individuals who were demoted to "part time" status could regain "full time" status by various demonstrations of penance, including formal apologies to UNOI heads expressing shame and contrition.

31. UNOI employs a strict discipline system, which was primarily developed, approved, and enforced by Jenkins. Under this system, individuals could receive "Class A" discipline for severe misconduct (*e.g.*, talking back to superiors or using an incorrect tone[8]). Followers subjected to "Class A" discipline were not permitted to speak freely to anyone, and instead had to ask permission of the individual they wanted to speak with (including small children) to speak during the period of punishment, which could range from fifteen (15) days to indefinitely. Followers subjected to "Class A" discipline were often forced to fast.

32. Individuals could receive "Class B" punishment for moderately severe misconduct (*e.g.*, playing too much, not cleaning one's bedroom, failing a home inspection). Followers subjected to "Class B" discipline were subject to public censure during meetings. Followers subjected to "Class B" discipline were also often forced to fast.

33. Individuals could receive "Class C" punishment at the conclusion of Class A or Class B punishment as a parole mechanism. Individuals who received Class C punishment were observed more closely for UNOI violations for approximately thirty (30) days.

---

[8]     Jenkins mandated that anyone talking to him must use a tone equal to or lower than his tone or the tone of anyone in the Royall family.

10

34.     Individuals could receive "Class F" punishment for extremely severe misconduct (*e.g.*, being overweight, child molestation).[9]  Followers subjected to "Class F" discipline were banished from UNOI.

35.     In April 2015 (after Ms. Ross was able to remove herself from the cult), Jenkins and other key leaders of UNOI organized The Value Creators and, upon information and belief, transferred substantially all of the assets relevant to this lawsuit to The Value Creators.

### 2.     UNOI Doctrine.

36.     UNOI doctrine focused primarily on the supremacy of Jenkins as God on Earth. As such, disciples of UNOI – and now The Value Creators – consider Jenkins' teachings as prophetical.

37.     Jenkins' teachings emphasize and prioritize the differences between the races and genders. Jenkins claims that the "Black Man" is superior to the "White Man," and that the "Black Man" created the "Black Woman" as a natural pleasure.  Jenkins further teaches that women are inferior to men, and that women should completely submit to men to escape eternal damnation.

38.     These basic teachings mandated a very regimented and controlled family organizational structure within UNOI.  UNOI required female members to attend regular women's meetings, where women learned how to be "good housewives" and how to "submit" to their husbands.  UNOI required male members to attend regular men's meetings, where men learned how to lead and direct their wives and children.  Jenkins is the primary author of the educational materials for both the women's and men's gender role meetings.

39.     UNOI monitored women's body weights closely.  UNO weighs women every

---

[9]     Jenkins forced individuals to stay under a certain weight by threatening that at some point in the future, a spaceship would come to take followers to a new world, and only those individuals who could fit in the seats would be permitted to board.

Sunday before services. If a full-time female member was over an "ideal" weight, UNOI required her to fast. If a part-time female member was over an "ideal" weight, UNOI required her to pay a fee. Women were forced to meet with a psychic "doctor" to discuss their nutritional needs and diet.

40.     UNOI controlled the language that members were permitted to use. For example, members were not permitted to say "Bless You," "Please," or any words that began with the letter "P." UNOI instructed members to say "however" instead of "but" and to say "share with" instead of "told."

41.     UNOI employed an extensive system for courtship and marriage. Under this system, males submitted "bids" on females to Jenkins through his chain of command within the organization. The bids were either approved or disapproved as they flowed up the UNOI chain of command to Jenkins. Jenkins ultimately approved or disapproved those bids previously approved by his lower deputies. Jenkins' reasons for disapproving bids were often as simply as the individuals were "not meant for each other." There were no minimum age limits or restrictions regarding marriage among UNOI members.

42.     Once approved, the male engaged the females in three distinct stages of courtship. First, males were instructed to send an email to UNOI leadership. This email contained a list of individuals the male was interested in. The leader would then forward that email to a psychic doctor who he claimed knew which members were compatible with each other. Then, the doctor would notify the UNOI leadership with whom the member was compatible.

43.     After the male selected a female from this list, they would start "interviewing" (*i.e.* dating). At first, couples could only talk on the phone and in person. Then, they were permitted to have physical contact, but no sexual contact.

12

44.     If the union was permitted by UNOI leadership, the final step in this process was marriage. Upon information and belief, no members who married within UNOI received government licenses to wed.

45.     The entire courtship process typically took five (5) months. UNOI officers would then conduct interviews with the males and females throughout the process for UNOI approvals.

### 3.     Education of Children and Adolescents Within UNOI.

46.     Jenkins authored the central literature for UNOI, including children's education curriculum. This literature included some of the original teachings from Elijah Mohammed, along with literature authored by Jenkins.

47.     At all times relevant to this lawsuit, UNOI did not send its child and adolescent members to public school, and instead required their attendance in UNOI's own education system. Jenkins' teachings stated that public school systems are corrupt.

48.     UNOI's education system did not include properly certified teachers or teaching curriculum. If individuals excelled in a particular subject area, UNOI would appoint them as teachers in that specified area. UNOI's education system included courses on Jenkins' literature, science, and math. Jenkins' teachings permeated all of the subjects in the children's education curriculum. Courses often stopped abruptly and were not on a particular schedule or syllabus. During UNOI classes, young students were shown horror films such as "The Omen" and "Crazy as Hell."

49.     UNOI ran a school called the "University of the Art and Logistics of Civilization." UNOI required all full time members to attend the "University of the Art and Logistics of Civilization." Many other UNOI members attended classes by listening to Jenkins' recordings or conference calls led by other cult leaders in the living room of the home where

they were staying.

50.     The disciplinary system at UNOI schools involved paddling children for any infractions, even accidental.  For example, if a child accidentally touched one of Jenkins' children or grandchildren, they were beaten.

### 4.     Working In UNOI.

51.     UNOI forced its members to work in various businesses it owned, including, but not limited to, restaurants, bakeries, supermarkets, gas stations, a sewing factory, and a construction company.

52.     At all times relevant to this lawsuit, UNOI ran the business called "Food for Life Supreme."  Upon information and belief, The Value Creators currently owns and operates Food for Life Supreme.

53.     Food for Life Supreme operates or formerly operated at times relevant to this Complaint in Atlanta, Georgia; Newark, New Jersey; Harlem, New York; Temple Hills, Maryland; Dayton, Ohio; Cincinnati, Ohio; Mobile, Alabama; and Kansas City, Kansas.

54.     As detailed below, many members (including Ms. Ross) worked every day of the week with no breaks.  Many members worked at UNOI bakeries, restaurants, and schools for eight (8) hours shifts during the day and were then expected to do additional work (cooking, cleaning, childcare) when they returned to the home where they was staying.

55.     UNOI heads of household had several teenage members living with them, and the heads of household would dictate what their labor was at home.

56.     UNOI controls where and when members go to the supermarket and which groceries they are allowed to buy.  UNOI maintained a list of approved grocery stores and approved items for members to buy.  Members were required to fill out a grocery list for

approval for communal shopping runs.

57.    Many UNOI members, including Ms. Ross, received food stamps from the federal government. All full-time members had to surrender their Electronic Benefit Transfer ("EBT") cards to UNOI leaders, and UNOI rationed funds from these cards by household, thereby controlling members' budget allowance from the federal government. Members did not receive a ration that was equivalent to the ration provided to them individually through the EBT cards.

58.    UNOI and The Value Creators members work at UNOI businesses but are not paid for the work they perform.

    5.  Health Care for Members of UNOI.

59.    At all times relevant to this lawsuit, UNOI did not provide its members with any health insurance.

60.    At all times relevant to this lawsuit, UNOI did not allow its members to receive medical care offered by individuals outside of UNOI. Instead, UNOI only permitted its members to receive medical care from an individual named Dr. Marvin MacIntosh for all medical issues (*e.g.*, obstetrics, gynecology, minor emergency medicine, pediatrics, etc.). Upon information and belief, no UNOI members providing medical care are licensed physicians.

    6.  The Demise of UNOI.

61.    In or around September 2011, Jenkins began changing his teaching on key doctrines such as death and free will. Jenkins said UNOI would "be tested" and that he individually was "going through a testing period." At the same time, the chain of command of UNOI began to dissipate, and Jenkins moved to Arizona, which he called "the land of peace."

62.    Following this "testing period," Jenkins and other leaders organized The Value Creators entities.

63.     Despite the shift in teaching and "testing period," as of the date of the filing of this Complaint, Jenkins remains the leader of The Value Creators.

C.      The Value Creators.

64.     Jenkins and others established The Value Creators as a successor in interest to UNOI.

65.     The Value Creators is effectively UNOI under a different name, and it includes all of the same (or similar) businesses and members.

66.     Upon information and belief, The Value Creators essentially maintains the same doctrines, chain of command structure, "employment" practices, educational mandates, and health care directives the UNOI employed.

II.     Ms. Kendra Ross

A.      Early Life.

67.     Ms. Ross was born in 1991 in Memphis, Tennessee.

68.     In 1993, at the age of two, Ms. Ross moved to Atlanta, Georgia with her mother. Ms. Ross' mother was introduced to UNOI by the local temple leader shortly after settling in Atlanta. Ms. Ross' mother, and therefore Ms. Ross, joined UNOI around that time.

69.     From age two (2) until age eleven (11), Ms. Ross and her mother were "part time" members of UNOI, meaning they participated in UNOI but lived outside of the organization.

70.     When she was nine (9) years old, Ms. Ross began cooking and packaging food for UNOI fundraisers. All of the proceeds from these fundraisers directly went to the Defendants. Ms. Ross did not receive any compensation for this work.

71.     Ms. Ross attended public school in the Atlanta area through the fifth grade.

B.      Move To Kansas City, Kansas.

16

72.     In 2002, at the age of eleven, Ms. Ross and her mother moved to Kansas City, Kansas, where they were elevated to "full time" status members of UNOI. Around that time, UNOI commanded Ms. Ross' mother to remove Ms. Ross from public school and to send her to a UNOI-run school. Ms. Ross' mother obeyed the command.

73.     Beginning at age eleven, Ms. Ross was forced to work at a UNOI-run bakery and restaurant for a few hours before school and a full eight-hour shift after school. Ms. Ross received a call from a UNOI Secretary instructing her to work in the bakery. Ms. Ross was also forced to sell baked goods and work at catering events for UNOI. Ms. Ross also worked at a UNOI home (cooking, cleaning, childcare) after working in the bakery.

74.     In 2003, at age twelve, Jenkins ordered Ms. Ross removed from her mother's home, and directed that she be sent to live in a women's household run by UNOI. This household consisted of a few women with young girls, other girls around Ms. Ross' age, and Ms. Ross' sister.

75.     During this time, UNOI commanded Ms. Ross to maintain a strict diet of rice, beans, fruit, and salad. As a result, Ms. Ross became severely malnourished. Ms. Ross was not permitted to see a licensed doctor or otherwise receive medical attention for her malnourishment.

76.     From the age of eleven (11) through the age of fourteen (14), Ms. Ross worked approximately 8,320 hours at the bakery, and approximately 2,080 hours as a maid. The prevailing wages at that time for Kansas City were $11/hour for her bakery services and $9/hour for her cleaning services. Ms. Ross, however, was not compensated for any of this work.

77.     UNOI removed Ms. Ross out of UNOI-run school at the age of fifteen (15) in order to work at a UNOI-owned and operated diner and teach younger UNOI students. At the diner, she prepared and cooked food. UNOI never permitted Ms. Ross to attend any school,

17

UNOI or otherwise, after the age of fifteen (15).

78.     During a UNOI celebration, Ayesha Mohammad, one of Jenkins' wives, publicly called Ms. Ross and others to gather on a stage and announced where each of the individuals would be shipped for work. Ms. Ross did not have any prior notice of this forced move. Ms. Ross was forced to move to Atlanta within two (2) days of that announcement.

79.     Ms. Ross worked approximately 2,600 hours at the diner in 2006 and 2007. The prevailing wages at that time for a diner cook in Kansas City were $12/hour. Ms. Ross was not compensated for any of this work.

C.      Move To Atlanta, Georgia.

80.     In 2007, at the age of 16, UNOI moved Ms. Ross to Atlanta, Georgia, without her permission. UNOI informed Ms. Ross, along with a few other members, of their forced move to Atlanta, Georgia at Jenkins' birthday party in Kansas. UNOI called the names of all members who were being forced to move and instructed them to come to the front of the stage, where they met with one of Mr. Jenkins' wives. Ms. Ross was relocated to Atlanta, Georgia a few days after this party.

81.     When UNOI moved Ms. Ross to Atlanta, Georgia, Ms. Ross' mother and sister were placed on part-time status and were living together. Ms. Ross' mother did not know that Ms. Ross would be moving to Atlanta.

82.     While in Atlanta, Ms. Ross was forced to work full-time in a restaurant owned and operated by UNOI without any pay. Her work consisted of preparing food for the restaurant and baking pies, cakes, and other pastries.

83.     While working at the restaurant in Atlanta, Ms. Ross severely cut her finger. She was not given any medical attention except for two band-aids to stop the bleeding.

18

84.     While in Atlanta, Ms. Ross lived in one of Jenkins' family homes with one of Jenkins' wives, one of Jenkins' concubines, the husband and son of the concubine's sister, another couple, and approximately twelve (12) other minors.  Jenkins had another home approximately twenty (20) minutes away from the home where Ms. Ross lived, where he consorted with his other wives while he was in town.

85.     After Ms. Ross returned home from the restaurant, UNOI forced her to prepare food, cook, and clean for the household of approximately fifteen (15) people.  Ms. Ross was never paid for any of this work.

86.     UNOI sent Ms. Ross back to Kansas because she did not have the "proper attitude" according to UNOI officials.  Ms. Ross was located in Atlanta for four (4) or five (5) months total.

87.     During the five (5) months she was in Atlanta, Ms. Ross worked approximately 1,320 hours as a cook at the restaurant, and approximately 308 hours as a house cook and maid. The prevailing wages at that time for Atlanta were $12/hour for her restaurant cooking services and $10/hour for her maid services.  Ms. Ross was not compensated for any of this work.

D.     Move Back To Kansas City, Kansas.

88.     Later that year, UNOI moved Ms. Ross back to Kansas City where she lived in a UNOI home with a few younger women, men, and couples.  In this home, Ms. Ross was subjected to physical and emotional abuse by the caretaker of the home.  Although she reported several injuries, she was not permitted to access the medical care of a licensed medical professional.

89.     Also during this time, Ms. Ross worked at a diner making meals for twenty-five (25) single UNOI men and also provided childcare for the children in the home.  Ms. Ross would

19

typically arrive at the diner at 8:00 a.m. and work until 5:00 p.m., seven (7) days a week. She also waited tables, but was not permitted to keep her tips. UNOI required that all tips be placed in the cash register. Upon returning to the home, Ms. Ross would clean, cook, and serve everyone until 8:30 p.m. or 9:00 p.m. each night.

90.     Mayesha Jenkins, the granddaughter of Royall Jenkins, called Ms. Ross while she was living in Kansas to tell her that she was moving to Newark, New Jersey. UNOI moved Ms. Ross to New Jersey a few days after she received this phone call.

91.     During her time in Kansas City, Ms. Ross worked approximately 6,552 hours at the diner, and approximately 2,184 hours as a maid. The prevailing wages at that time for Kansas City were $12/hour for her services at the diner and $10/hour for her housemaid and childcare services. Ms. Ross was not compensated for any of this work.

E.     Move To New Jersey and New York.

92.     In April 2009, at the age of seventeen, Defendants forcibly moved Ms. Ross to New Jersey, where she worked in restaurants in Newark, New Jersey, and Harlem, New York. Her scope of work included preparing food, grilling, cooking, and waiting tables for the restaurant. She was not permitted to keep her tips and instead UNOI confiscated them.

93.     While working in UNOI restaurants in New Jersey and New York, UNOI leaders expressed concern about government officials discovering minors working at their restaurants. UNOI leaders (specifically, Kaaba Majeed, the National Lieutenant for men) instructed Ms. Ross and others to avoid any child labor investigators and that if the child labor investigation team visited the restaurant, she needed to leave and "take a walk."

94.     In addition to working at UNOI restaurants, Ms. Ross was forced to cook for an entire household of approximately twenty-five (25) UNOI members.

95.     During her time in New York and New Jersey, Ms. Ross worked approximately 1,820 hours as a cook at the restaurant, and approximately 156 hours as a maid and house cook. The prevailing wages at that time for the New York City area were $14/hour for her bakery services and $12/hour for her cleaning services. Ms. Ross was not compensated for any of this work.

96.     While in New Jersey, Maryum Mohammed (a "full time" member of UNOI) reported Ms. Ross to Antoinette Kelly, granddaughter to Royall Jenkins, and said that Ms. Ross did not clean a blender in the restaurant. Ms. Ross received a disciplinary phone call from a UNOI leader for this infraction.

97.     UNOI leaders told Ms. Ross that she had to leave New Jersey because she did not have the "right spirit." The next day, UNOI leaders forced Ms. Ross onto a UNOI delivery truck to move.

F.      Move To Dayton, Ohio.

98.     In 2009, at the age of eighteen (18), UNOI forcibly moved Ms. Ross to Dayton, Ohio. In Dayton, Ms. Ross lived in a group home, then with Jenkins and his family, and later with a UNOI couple who had been demoted to "part-time" status.

99.     While living with Jenkins and his family, Ms. Ross was forced to clean the entire home, with the exception of Jenkins' bedroom and bathroom because special permission was required to go into these areas.

100.    In Dayton, Ms. Ross worked for another UNOI restaurant. Her duties included preparing food and cooking for the carry-out and community customers. She worked six (6) days per week, beginning at 6:00 a.m. in the morning and at times working as late as 11:00 p.m. Other than Sundays, Ms. Ross never took a single day off work while she was in Dayton.

21

101. During her time in Dayton, Ms. Ross worked approximately 2,652 hours at the restaurant, and approximately 78 hours as a maid. The prevailing wages at that time for Dayton were $12/hour for her restaurant cooking services and $10/hour for her cleaning services. Ms. Ross was not compensated for any of this work.

102. While in Dayton, the government issued Ms. Ross a $150 per month food subsidy. Without Ms. Ross's consent, UNOI confiscated Ms. Ross's subsidy for its own use every month she was in Dayton.

G.     Probation and Expulsion.

103. In 2009, UNOI demoted Ms. Ross to "part time" status after she refused to drink "bloodroot," a gin-based drink. After Ms. Ross refused to drink "bloodroot," she was reported to Mayesha Jenkins, the granddaughter of Royall Jenkins. Mayesha Jenkins informed her that she had three (3) days to find somewhere else to live, and that she would be placed on "part time" status.

104. Later that same year, UNOI placed Ms. Ross on "away from us indefinitely" status and forcibly moved her to Tennessee, where she lived with her aunt (a non-UNOI member). This was the first time since age two (2) that Ms. Ross lived with an individual who was not a member of UNOI.

H.     Coercion Back to UNOI.

105. UNOI ensured Ms. Ross' subservience and silence by severely restricting her movement, communication, and lifestyle. While she was with UNOI, UNOI restrained Ms. Ross through express or implied threats of force and harm if she attempted to leave. Ms. Ross was regularly subjected to humiliating and degrading treatment at UNOI and Royall Family households and UNOI's businesses that made it clear that she was little more than an unpaid

servant or slave in the eyes of UNOI. Ms. Ross also endured verbal abuse and physical abuse at the businesses and households. Indeed, UNOI unlawfully violated Ms. Ross' personal liberty by subjecting her to forms of mental, physical, and economic coercion and cruelty.

106.    During the time Ms. Ross was on "indefinitely away from us" status, UNOI did not allow Ms. Ross to have any contact with her mother, sisters, or friends – all of whom were members of UNOI.   As a result, Ms. Ross was alone because every person in her life from the age of eleven (11) was a member of UNOI.

107.    UNOI obstructed Ms. Ross' communications with her friends and family as a means to coerce and control Ms. Ross into rejoining UNOI. Specifically, UNOI understood that a member who was "away from us" would feel enormous pressure to rejoin UNOI once they entered mainstream American society because the UNOI community was so dissociated from mainstream society.

108.    Feeling that pressure to rejoin the only life she knew, Ms. Ross told leaders of the organization that she "wanted to make her record right with Allah," and had "learned her lesson" in April 2010. UNOI permitted Ms. Ross to move back to Dayton, Ohio, where she lived with her sister and continued to work at a UNOI restaurant without pay.

109.    For the next two (2) years, Ms. Ross worked approximately 10,608 hours at the restaurant, and approximately 312 hours as a maid. The prevailing wages at that time for Dayton were $12/hour for her cooking services and $10/hour for her cleaning services. Ms. Ross, however, was not compensated for any of this work.

I.      Marriage

110.    At age 20, UNOI facilitated a marriage between Ms. Ross and another UNOI member through a psychic doctor who claimed to have unique knowledge of compatibility

23

among UNOI members.

111.    Ms. Ross' UNOI marriage became official, according to UNOI terms, on October 10, 2011.

112.    Ms. Ross was forced to do all of the cooking, cleaning, and housework in the home she shared with her UNOI husband.

113.    UNOI husbands, including the individual to whom UNOI arranged a marriage with Ms. Ross, regularly practiced polygamy.

114.    Ms. Ross is no longer in a marriage recognized by the Defendants.

115.    Ms. Ross is not, and has never been, in a legal marriage.

J.      Escape From UNOI.

116.    Ms. Ross' painful ordeal ended only with the fracturing of UNOI and guidance of outside family members and non-profit organizations that learned of Ms. Ross' treatment.

117.    Finally, in 2012, at the age of 21, Ms. Ross gathered her courage and strength to escape from UNOI.

118.    In 2014, Ms. Ross was diagnosed with post-traumatic stress disorder ("PTSD") resulting from her trafficking.  While she is able to control her PTSD and emotional health with properly-prescribed treatment, she still suffers from the psychological effects of a childhood of trafficking.

119.    Ms. Ross's first became emotionally healthy enough to file this lawsuit in 2017.

120.    Now, Ms. Ross seeks to bring Jenkins and his companies who trafficked her to justice in this Court to seek monetary compensation for approximately 40,000+ hours of forced labor, her pain and suffering of the trafficking and losing her childhood to the Defendants, and to punish the Defendants for their abhorrent and malicious trafficking practices.

24

## COUNT I
### (Civil Action Under Federal Law for Forced Labor)
### (Against All Defendants)

121.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

122.    Defendants knowingly provided or obtained the labor or services of Ms. Ross by means of force, threats of force, physical restraint, or threats of physical restraint to Ms. Ross.

123.    Defendants knowingly provided or obtained the labor or services of Ms. Ross by means of serious harm or threats of serious harm to Ms. Ross.

124.    Defendants knowingly provided or obtained the labor or services of Ms. Ross by means of a scheme, plan, or pattern intended to cause Ms. Ross to believe that, if she did not perform such labor or services, she would suffer serious harm or physical restraint.

125.    Defendants knowingly benefitted financially and/or by receiving anything of value from participating in a venture which has engaged in the providing or obtaining of forced labor or services by any of the means described herein, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of forced labor or services by any of such means.

126.    As a result of Defendants' conduct, Ms. Ross has suffered economic damages, for which she should be compensated in the amount of $451,196, or any other amount to be determined at trial.

127.    As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and physical pain and suffering, for which she should be compensated in the amount of $2,250,000, or any other amount to be determined at trial.

128.    Defendants' conduct warrants the Court's imposition of $5,000,000 in punitive damages against Defendants.

129. Pursuant to 18 U.S.C. § 1595, Ms. Ross is entitled to recover damages and reasonable attorney's fees for Defendants' wrongful conduct.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count I and award her at least $7,701,196 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

## COUNT II
### (Civil Action Under Federal Law for Trafficking)
### (Against All Defendants)

130. Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

131. Defendants knowingly recruited, harbored, transported, provided, and/or obtained by any means, Ms. Ross for her labor or services in violation of 18 U.S.C. §§ 1981 *et seq*.

132. Defendants knowingly benefitted financially and/or by receiving anything of value from participating in a venture which has engaged in the trafficking of forced labor by any of the means described herein, knowing or in reckless disregard of the fact that the venture has engaged in the trafficking of forced labor or services by any of such means.

133. As a result of Defendants' conduct, Ms. Ross has suffered economic damages, for which she should be compensated in the amount of $451,196, or any other amount to be determined at trial.

134. As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and physical pain and suffering, for which she should be compensated in the amount of $2,250,000, or any other amount to be determined at trial.

135. Defendants' conduct warrants the Court's imposition of $5,000,000 in punitive damages against Defendants.

136. Pursuant to 18 U.S.C. § 1595, Ms. Ross is entitled to recover damages and

26

reasonable attorney's fees for Defendants' wrongful conduct.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count II and award her at least $7,701,196 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

## COUNT III
### (Civil Action Under Kansas Law for Victims of Human Trafficking)
### (Against All Defendants)

137.   Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

138.   Defendants intentionally recruited, harbored, transported, and obtained Ms. Ross for labor or services through the use of force, fraud, or coercion for the purpose of subjecting Ms. Ross to involuntary servitude and/or forced labor.

139.   Defendants intentionally benefitted financially through participation in a human trafficking venture involving Ms. Ross and had reason to know that Ms. Ross was subjected to involuntary servitude and forced labor.

140.   Defendants knowingly coerced Ms. Ross' employment by obtaining or maintaining labor or services by causing or threatening to cause physical injury to any person; and threatening to withhold food, lodging, or clothing.

141.   Ms. Ross has suffered both personal and psychological injury as a result of Defendants' trafficking and forced labor operation.

142.   As a result of Defendants' conduct, Ms. Ross has suffered economic damages, for which she should be compensated in the amount of $241,904, or any other amount to be determined at trial.

143.   As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and physical pain and suffering, for which she should be compensated in the amount of

$1,200,000, or any other amount to be determined at trial.

144. Defendants' conduct warrants the Court's imposition of $5,000,000 in punitive damages against Defendants.

145. Pursuant to K.S.A. §§ 60-5003(a)-(b), Ms. Ross is entitled to recover damages and reasonable attorney's fees for Defendants' wrongful conduct.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count III and award her at least $6,441,904 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

<u>COUNT IV</u>
(Civil Action for Violation of Kansas Minimum Wage and Overtime Law)
(Against All Defendants)

146. Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

147. Kansas law at the relevant time required Defendants to pay Ms. Ross at the minimum wage of $7.25 per hour.

148. Defendants knowingly and willfully failed and refused to pay Ms. Ross the minimum wage required under Kansas law for the hours worked and services provided for Defendants by Ms. Ross while she worked in Kansas for Defendants.

149. Defendants knowingly and willfully required or permitted Ms. Ross to work in violation of these standards, and knowingly and willfully failed and refused to pay Ms. Ross wages for overtime hours worked as required under Kansas law.

150. Defendants have failed to keep adequate employment records and have not properly or adequately recorded Ms. Ross' hours worked.

151. Defendants knowingly and willfully failed and refused to provide Ms. Ross with rest breaks and meal periods as required by Kansas law.

152.   Defendants' willful failure to pay Ms. Ross the overtime premiums required by law violates the overtime provisions of K.S.A. §§ 44-1202 *et. seq.*

153.   Defendants' failure to pay Ms. Ross minimum wages and overtime premiums was not in good faith, and Defendants had no reasonable grounds for believing that their failure to pay such wages and overtime premiums was not a violation of Kansas law.

154.   Ms. Ross is entitled to recover all unpaid minimum and/or overtime wages to which she is entitled, plus interest and attorney's fees and costs incurred in bringing the civil action. Ms. Ross is also entitled to liquidated damages in an amount equal to the minimum wages unlawfully not paid to her by Defendants and interest thereon.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count IV and award her at least $315,172 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

## COUNT V
### (Civil Action Under New York Law for Victims of Labor Trafficking)
### (Against All Defendants)

155.   Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

156.   Defendants compelled and/or induced Ms. Ross to engage in labor or recruited, enticed, harbored, and/or transported Ms. Ross by means of intentionally requiring that the labor be performed to retire, repay, or service a real or purported debt that Defendants have caused by a systematic ongoing course of conduct with an intent to defraud Ms. Ross.

157.   Defendants compelled and/or induced Ms. Ross to engage in labor and/or recruited, enticed, harbored, and/or transported Ms. Ross by means of intentionally using force and/or engaging in any scheme, plan or pattern to compel and/or induce Ms. Ross to engage in and/or continue to engage in labor activity by means of instilling a fear in such person that, if the

demand is not complied with, Defendants would do one or more of the following:

    a.    Cause physical injury, serious physical injury, or death to a person; and/or

    b.    Engage in other conduct constituting a felony or unlawful imprisonment in the second degree in violation of N.Y. Penal Code § 135.05; and/or

    c.    Expose a secret or publicize an asserted fact, whether true or false, tending to subject Ms. Ross to hatred, contempt, or ridicule.

158.    As a result of Defendants' conduct, Ms. Ross has suffered economic damages, for which she should be compensated in the amount of $13,676, or any other amount to be determined at trial.

159.    As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and physical pain and suffering, for which she should be compensated in the amount of $65,000, or any other amount to be determined at trial.

160.    Defendants' conduct warrants the Court's imposition of $5,000,000 in punitive damages against Defendants.

161.    Pursuant to N.Y. Social Services Code § 483-bb(c), Ms. Ross is entitled to recover damages and reasonable attorney's fees for Defendants' wrongful conduct.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count V and award her at least $5,078,676 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

COUNT VI
(Civil Action for Violation of New York Minimum Wage Law)
(Against All Defendants)

162.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

163.    New York law at that time required Defendants to pay Ms. Ross at the minimum

30

wage of $7.15 per hour.

164.    Defendants paid Ms. Ross less than the legal minimum wage prevailing at the time Defendants forced Ms. Ross to work in New York.

165.    Defendants' failure to pay Ms. Ross minimum wages was not in good faith, and Defendants had no reasonable grounds for believing that their failure to pay such wages and overtime premiums was not a violation of New York law.

166.    Pursuant to N.Y. Labor Code § 663(1), Ms. Ross should recover all unpaid minimum wages to which she is entitled, plus 100% of the unpaid wages as liquidated damages, plus pre-judgment interest and attorney's fees and costs incurred in bringing the civil action.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count VI and award her at least $28,257 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

COUNT VII
(Civil Action Under New Jersey Law for Victims of Human Trafficking)
(Against All Defendants)

167.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

168.    Defendants knowingly held, recruited, lured, enticed, harbored, transported, provided or obtained labor and/or services:

       a.    by causing or threatening to cause serious bodily harm and/or physical restraint against Ms. Ross;

       b.    by means of scheme, plan, and/or pattern intended to cause Ms. Ross to believe that she would suffer serious bodily harm or physical restraint; and/or

       c.    by means of fraud, deceit, and/or misrepresentation against Ms. Ross.

169.    Defendants received value from their participation as organizers, supervisors, financiers, and/or managers in a scheme or course of conduct in violation of New Jersey human trafficking law.

170.    As a result of Defendants' conduct, Ms. Ross has suffered economic damages, for which she should be compensated in the amount of $13,676, or any other amount to be determined at trial.

171.    As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and physical pain and suffering, for which she should be compensated in the amount of $65,000, or any other amount to be determined at trial.

172.    Defendants' conduct warrants the Court's imposition of $5,000,000 in punitive damages against Defendants.

173.    Pursuant to N.J. Stat. § 2C:13-8.1, Ms. Ross is entitled to recover damages for Defendants' wrongful conduct.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count VII and award her at least $5,078,676 plus pre-judgment interest.

COUNT IX<br>
(Civil Action Under New Jersey to Recover Amount of Minimum Wage)<br>
(Against All Defendants)

174.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

175.    New Jersey law at that time required Defendants to pay Ms. Ross at the minimum wage of $7.25 per hour.

176.    Defendants refused to pay Ms. Ross the minimum and overtime wages required under New Jersey law for the hours worked and services provided for Defendants by Ms. Ross while she worked in New Jersey for Defendants.

177.    Defendants' failure to pay Ms. Ross minimum wages and overtime premiums was not in good faith, and Defendants had no reasonable grounds for believing that their failure to pay such wages and overtime premiums was not a violation of New Jersey law.

178.    Pursuant to N.J. Stat. § 34.11-56a25, Ms. Ross is entitled to recover all unpaid minimum and/or overtime wages to which she is entitled, plus interest and attorney's fees and costs incurred in bringing the civil action.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count IX and award her at least $14.326, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

COUNT X
(Civil Action Under Ohio Law for Victims of Human Trafficking)
(Against All Defendants)

179.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

180.    Defendants knowingly and/or knowingly attempted to recruit, lure, entice, isolate, harbor, transport, provide, obtain, and/or maintain Ms. Ross, and:

a.    Defendants knew that Ms. Ross would be subjected to involuntary servitude;

b.    Ms. Ross was seventeen (17) years of age at the time, and Defendants knew that Ms. Ross would be subjected to involuntary servitude and/or Defendants' knowing and/or knowing attempt at recruitment, luring, enticement, isolation, harboring, transportation, provision, obtaining, and/or maintenance of Ms. Ross was for the purpose of involuntary servitude.

181.    Ms. Ross has suffered both personal and psychological injury as a result of Defendants' trafficking and forced labor operation.

182.    As a result of Defendants' conduct, Ms. Ross has suffered economic damages, for

which she should be compensated in the amount of $163,020, or any other amount to be determined at trial.

183.   As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and physical pain and suffering, for which she should be compensated in the amount of $815,000, or any other amount to be determined at trial.

184.   Defendants' conduct warrants the Court's imposition of $5,000,000 in punitive damages against Defendants.

185.   Pursuant to Ohio Rev. Code § 2307.51, Ms. Ross is entitled to recover damages for Defendants' wrongful conduct.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count X and award her at least $5,978,020, plus pre-judgment interest.

COUNT XI

(Civil Action for Violation of Ohio Minimum Wage and Overtime Law)
(Against All Defendants)

186.   Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

187.   Ohio law at that time required Defendants to pay Ms. Ross at the minimum wage of $7.30 per hour.

188.   Defendants refused to pay Ms. Ross the minimum and overtime wages required under Ohio law for the hours worked and services provided for Defendants by Ms. Ross while she worked in Ohio for Defendants.

189.   Ms. Ross was not permitted to receive any tips for her work.

190.   The corporate Defendants are not family-owned and/or operated businesses.

191.   Defendants' failure to pay Ms. Ross minimum wages and overtime premiums was not in good faith, and Defendants had no reasonable grounds for believing that their failure to

pay such wages and overtime premiums was not a violation of Ohio law.

192.    Pursuant to Ohio Rev. Code § 4111.10, Ms. Ross is entitled to recover all unpaid minimum and/or overtime wages to which she is entitled, plus interest and attorney's fees and costs incurred in bringing the civil action. Ms. Ross is also entitled to liquidated damages in an amount equal to the minimum wages unlawfully not paid to her by Defendants and interest thereon.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XI and award her at least $199,290, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

COUNT XII
(Violations of the Federal Fair Labor Standards Act)
(Against All Defendants)

193.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

194.    The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, provides that an employee employed in domestic service in a household shall be paid the minimum wage as required by law.

195.    Ms. Ross provided services on a daily and weekly basis for Defendants, so that at all relevant times each of the Defendants was a single employer or joint employer of Ms. Ross within the meaning of the 29 U.S.C. § 203(d). Defendants never paid Ms. Ross the minimum wage for the services that she provided to them.

196.    Defendants have violated 29 U.S.C. § 206 by failing to pay Ms. Ross the applicable minimum wage for every compensable hour of labor she performed.

197.    Defendants have violated 29 U.S.C. § 207 by failing to pay Ms. Ross the applicable overtime wages for every compensable hour of labor she performed.

198.    Defendants have violated 29 U.S.C. § 211(c) by failing to make, keep, and preserve specific employment-related records, including records of their employees and of the wages, hours, and other conditions and practices of employment maintained by Defendants. Defendants have not accurately recorded the actual number of hours that each employee works. Defendants have failed to keep adequate employment records and have not properly or adequately recorded Ms. Ross' hours worked during her employment.

199.    Pursuant to 29 U.S.C. § 216(b), Ms. Ross is entitled to recover all unpaid wages, an additional equal amount as liquidated damages, and reasonable attorney's fees and costs in amounts to be proven at trial.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XII and award her at least $565,355, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

### COUNT XIII
#### (Civil Action for Violation of Federal Racketeer Influenced and Corrupt Organizations Act)
#### (Against All Defendants)

200.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

201.    The Defendants are associated in fact and an "enterprise" within the meaning of 18.U.S.C. § 1961(4).  At all relevant times as described in this Complaint, Defendants have been in an ongoing association for the purpose of executing essential aspects of the criminal worker exploitation scheme.

202.    Defendants, as an enterprise, have been engaged in the pattern and practice of human trafficking and forced labor as described in this Complaint in violation of, among other laws, 18 U.S.C. §§ 1589 & 1590.

203.    The predicate acts of criminal racketeering activity as described in this Complaint

constitute a "pattern of racketeering activity" as defined 18 U.S.C. § 1961(5). Defendants repeatedly committed the RICO predicate act of human trafficking and forced labor.

204.    Such acts of racketeering activity have been part of Defendants' regular way of doing business through the enterprise at least from 1978 through the present and therefore show a threat of continued criminal activity.

205.    Ms. Ross is a "person" with standing to sue within the meaning of 18 U.S.C. § 1964(c) because Defendants trafficked her around the United States and forced her to perform labor and services without compensation from ages eleven (11) through twenty (20).

206.    Ms. Ross was economically injured in the amount of $451,196 as a result of Defendants' racketeering practices.

207.    Defendants regularly moved goods and people across state lines and therefore were engaged in interstate commerce.

208.    Pursuant to 18 U.S.C. § 1964(c), Ms. Ross is entitled to threefold the damages she sustained and the cost of the suit, plus a reasonable attorney's fee.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XIII and award her at least $1,353,588 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

COUNT XIV
(Conversion)
(Against All Defendants)

209.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

210.    Ms. Ross owned and had the right to possess her government-issued subsidies.

211.    Defendants converted Ms. Ross' government issued subsidies by wrongful act inconsistent with the property rights of Ms. Ross.

212.   As a direct and proximate result of Defendants' conversion of Ms. Ross's government subsidies, Ms. Ross has been damaged in the amount of $5,400.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XIV and award her at least $5,400, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

COUNT XV
(Unjust Enrichment)
(Against All Defendants)

213.   Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

214.   Ms. Ross conferred a benefit on Defendants by performing labor and services for Defendants as described in this Complaint.

215.   Defendants were aware of the benefit conferred upon them by Ms. Ross.

216.   Defendants retained that benefit without compensating Ms. Ross for the benefit she conferred on Defendants.

217.   Defendants' retention of the benefits Ms. Ross conferred on them without compensating Ms. Ross is inequitable and unjust.

218.   The value of the benefit conferred on Defendants is approximately $451,196.

219.   Ms. Ross is entitled to recover $451,196 from Defendants as a remedy for their unjust enrichment.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XV and award her at least $451,196, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

COUNT XVI
(Intentional Infliction of Emotional Distress)
(Against All Defendants)

220.  Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

221.  Defendants acted intentionally and/or recklessly in subjecting her to a culture that trafficked her and forced her to work without compensation.

222.  Defendants' conduct in human trafficking and forced labor is extreme and outrageous.

223.  Defendants' conduct caused Ms. Ross severe emotional distress.  Specifically, Defendants' conduct has caused Ms. Ross to suffer from Post-Traumatic Stress Disorder.

224.  As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and pain and suffering, for which she should be compensated in the amount of $2,250,000, or any other amount to be determined at trial.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XVI and award her at least $2,250,000, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

### COUNT XVII
(Negligent Infliction of Emotional Distress)
(Against All Defendants)

225.  Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

226.  Defendants acted negligently and/or carelessly in subjecting her to a culture that trafficked her and forced her to work without compensation.

227.  Defendants' conduct in human trafficking and forced labor is extreme and outrageous.

228.  Defendants' conduct caused Ms. Ross severe emotional distress.  Specifically, Defendants' conduct has caused Ms. Ross to suffer from Post-Traumatic Stress Disorder.

229.  As a result of Defendants' conduct, Ms. Ross has suffered significant emotional

and pain and suffering, for which she should be compensated in the amount of $2,250,000, or any other amount to be determined at trial.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XVII and award her at least $2,250,000, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

## JURY TRIAL DEMAND

Ms. Ross hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kendra Ross respectfully demands judgment in her favor, and against Defendants Royall Jenkins; The Value Creators, Inc.; The Value Creators LLC; and The Value Creators Inc. as follows:

(1) Compensatory and special damages in an amount to be proven at trial;

(2) Unpaid wages, including minimum wages and overtime premiums, in an amount to be proven at trial;

(3) Statutory penalties and liquidated damages according to proof at time of trial;

(4) Punitive and exemplary damages in an amount according to proof at the time of trial;

(5) Pre- and post- judgment interest;

(6) Reasonable attorney's fees and costs; and

(7) Such other and further relief as the Court deems just and proper.

Dated: September 14, 2017                    Respectfully submitted,

                                             s/ **KENDRA ROSS**

                                             *By Counsel*

/s Gillian Chadwick
Gillian Chadwick, Bar No. 27361
Supervising Attorney
Washburn Law Clinic
Washburn University School of Law
Topeka, Kansas  66621
785/670-1191
gillian.chadwick@washburn.edu

**PRO HAC VICE APPLICATION FILED
ON SEPTEMBER 14, 2017:**

Elizabeth A. Hutson, Esq. (D.C. Bar No. 1024845)
McGUIREWOODS LLP
2001 K Street, NW
Suite 400
Washington, DC 20006
Tel:  (202) 857-1700
Fax:  (202) 828-2973
E-mail:  ehutson@mcguirewoods.com

## VERIFICATION

I, Kendra Ross, am the plaintiff in the above-captioned action. I am and have been a resident and citizen of the United States of America since my birth. I am twenty-six (26) years old and am of sound mind and body to make this verification. I have read the foregoing Complaint, and fully understand the factual allegations, and also understand the legal claims I am asserting in this action. I verify under penalty of perjury that the foregoing is true and correct.

Executed on August 28, 2017

_____
Kendra Ross

# EVIDENCE C (EXHIBIT C)



# EVIDENCE D
# (EXHIBIT D)









# EVIDENCE E
# (EXHIBIT E)



The Kansas Department of Agricult   Food Safety and Lodging, 1320 Research Park Dr   lanhattan, KS 66502 (785)564-6733

## ATTENTION

This is a two-part document.
The bottom portion of this document is your OFFICIAL AUTHORIZATION from Kansas Department of Agriculture. Your license MUST be displayed in a conspicuous location at your place of business.

ROYALL TOUCH (THE)
2111 N 10TH ST
KANSAS CITY, KS 66104

Please Display License Below

---

**The Kansas Department of Agriculture, Manhattan, Kansas**
certifies

## ROYALL TOUCH (THE)

License Number : 24891 – Food Establishment
1113 N 5TH ST
KANSAS CITY, KS 66101

### Owned by: PARAPROFESSIONAL TEACHING INSTITUTE

has met the requirements for

**Licensing Under the Kansas Food, Drug and Cosmetic Act, KSA 65-619 et. seq.**

and is hereby granted

**Authority to operate as a Food Establishment**

Under Business Registration Number: **24891**

*Jackie McClaskey*

Jackie McClaskey
Secretary of Agriculture

Size: Under 5,000 sq feet

**Effective and Expiration Dates:**
03-31-2019 – 03-31-2020

**NOTICE: THIS LICENSE IS NOT TRANSFERABLE**

The Kansas Department of Agriculture, Food Safety and Lodging, 1320 Research Park Drive, Manhattan, KS 66502 (785)564-6733 www.agriculture.ks.gov

Food Establishment LICENSE

www.agriculture.ks
.gov



**BUSINESS LICENSE DIVISION**
Neighborhood Resource Center
Unified Government of Wyandotte County/Kansas City, Kansas
4953 State Ave.  Kansas City, Kansas  66102
p. (913) 573-8780 | f. (913) 573-8622 |  www.wycokck.org/businesslicense

# 2018
# Occupation Tax Receipt
## Exempt

Mailing Address
ATTN:  MARVIN KELLER
THE ROYALL TOUCH
1121 QUINDARO BLVD
KANSAS CITY, KS  66104

Date Receipt Issued:  **11/14/2018**

This certifies that

**THE ROYALL TOUCH**
**1113  N 5TH ST**
**KANSAS CITY, KS  66101**

is exempted from the Unified Government Occupation Tax for the privilege of conducting the business of

## EXEMPT 501(c)3 – TEACHING RESTAURANT

in the City of Kansas City, Kansas.  The Occupation Tax expires on: __12/31/2018__

No fee was required.

License # **18980-01005**

Phillip E. Henderson
License Administrator

THE ISSUANCE OF AN OCCUPATION TAX RECEIPT DOES NOT CREATE A PRESUMPTION THAT THE
BUSINESS HAS COMPLIED WITH THE UNIFIED GOVERNMENT REGULATORY ORDINANCES .

THIS RECEIPT MUST BE CONSPICUOUSLY DISPLAYED IN THE PLACE OF BUSINESS .
NO REFUNDS AVAILABLE .



**BUSINESS  LICENSE DIVISION**
Neighborhood Resource Center
Unified Government of Wyandotte County/Kansas City, Kansas
4953 State Ave.  Kansas City, Kansas  66102
p. (913) 573-8780  |  f. (913) 573-8622  |  www.wycokck.org/businesslicense

# 2019
# Occupation Tax Receipt
## Exempt

Mailing Address
ATTN:  MARVIN KELLER
THE ROYALL TOUCH
1121 QUINDARO BLVD
KANSAS CITY,  KS  66104

Date Receipt Issued:  **3/5/2019**

This certifies that

**THE ROYALL TOUCH**
**1113  N 5TH ST**
**KANSAS CITY,  KS  66101**

is exempted from the Unified Government Occupation Tax for the privilege of conducting the business of

## EXEMPT 501(c)3 – TEACHING RESTAURANT

in the City of Kansas City, Kansas.  The Occupation Tax expires on:  **12/31/2019**

No fee was required.

License #  **18980-01005**

Phillip E. Henderson
License Administrator

THE ISSUANCE OF AN OCCUPATION TAX RECEIPT DOES NOT CREATE A PRESUMPTION THAT THE
BUSINESS HAS COMPLIED WITH THE UNIFIED GOVERNMENT REGULATORY ORDINANCES.

THIS RECEIPT MUST BE CONSPICUOUSLY DISPLAYED IN THE PLACE OF BUSINESS.
NO REFUNDS AVAILABLE.

# EVIDENCE F
# (EXHIBIT F)

| CERTIFICATE OF INSURANCE | ISSUE DATE | 4/3/2018 |
|---|---|---|

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUDER, AND THE CERTIFICATE HOLDER.

IMPORTANT: IF THE CERTIFICATE HOLDER IS AN ADDITIONAL INSURED, THE POLICY(IES) MUST BE ENDORSED. IF SUBROGATION IS WAIVED, SUBJECT TO THE TERMS AND CONDITIONS OF THE POLICY, CERTAIN POLICIES MAY REQUIRE AN ENDORSEMENT. A STATEMENT ON THIS CERTIFICATE DOES NOT CONFER RIGHTS TO THE CERTIFICATE HOLDER IN LIEU OF SUCH ENDORSEMENT(S).

| PRODUCER | INSURER(S) AFFORDING COVERAGE | |
|---|---|---|
| Bolt Insurance Agency<br>10 Waterside Drive<br>#202<br>Farmington, CT 06032 | INSURER A: | Scottsdale Insurance Company |
| | INSURER B: | N/A |
| **INSURED** | INSURER C: | N/A |
| The Value Creators, Inc.<br>DBA Supreme Eatery<br>6816 Fox Meadow Rd<br>Gwynn Oak, MD 21207 | INSURER D: | N/A |
| | INSURER E: | N/A |

**COVERAGES**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE | LIMITS | |
|---|---|---|---|---|---|---|
| A | General Liability | CPS2909336 | 10/4/2017 | 10/4/2018 | General Aggregate | $2,000,000 |
| | | | | | Products-Com/Op Agg. | $1,000,000 |
| | | | | | Personal & Adv. Injury | $1,000,000 |
| | | | | | Each Occurrence | $1,000,000 |
| | | | | | Damage Prem Rented To You | $100,000 |
| | | | | | Med Expense (Any one person) | $5,000 |
| B | Personal Liability | | | | Combined Single Limit | |
| | | | | | Medical Payments To Others | |
| C | Excess Liability | | | | Each Occurrence | |
| | | | | | Aggregate | |
| D | | | | | | |
| | | | | | | |
| | | | | | | |
| E | Property | | | | Building | |
| | | | | | Contents | |
| | | | | | Loss Of Use | |

**Description of Operations / Specialty Items**
Restaurants with no sale of alcoholic beverages without table service with seating

| Certificate Holder | Should any of the above described policies be cancelled before the expiration date thereof, notice will be delivered in accordance with the policy provisions. |
|---|---|
| Salontra Select Suites<br>5471 Baltimore National Pike<br>Baltimore, MD 21229 | **Authorized Signature**  |



## CERTIFICATE OF SERVICE

I, Aereale "last name of Jenkins" come before the clerk of court in the county of PRINCE

GEORGE COUNTY in the year of Lord 2020 AD in the month September and on this day of the 16th will

be served by process.

_____ Date: 9/14/2020
Aereale Jenkins
Private Individual
PO Box 230
Brandywine, MD 20613

Cc

Cheryl Ross: Mother
Private Individual
3547 Spottswood Ave.
Memphis, TN 38111

and

Kendra Ross: Daughter
Private Individual
782 Saxon Court
Charlottesville, VA 22901

Gillian Chadwick
Washburn University School of Law
1700 SW College Avenue
Topeka, KS 66621

and

MCGUIREWOODS LLP
Elizabeth A. Hutson, Jonathan T. Blank, Katlyn Farrell, Benjamin P. Abel
2001 K Street NW, Suite 400
Washington, DC 20006

As her residence is allegedly under protection the above is being served on her behalf.

**MARYLAND** **CIRCUIT COURT FOR** Prince George's County _____ **, MARYLAND**

City/County

Located at 14735 Main Street, Upper Marlboro, MD 20772   **Case No.** _____

Court Address

| Aereale Jenkins | | vs. | Kendra Ross | |
|---|---|---|---|---|
| Plaintiff | | | Defendant | |
| PO Box 230 | | | 782 Saxon Court | |
| Address | | | Address | |
| Brandywine, MD 20613 | 913.749.8195 | | Charlottesville, VA 22901 | |
| City, State, Zip | Telephone | | City, State, Zip | Telephone |

## CERTIFICATE OF SERVICE

I certify that on this _____ day of _____ , _____ , a copy of the

Month         Year

document(s) titled COMPLAINT BREACH OF CONTRACT AND MEMORANDUM OF

Title(s) of document(s)

AGREEMENT BY DEFENDANTS DEFAMATION, LIBEL, SLANDER, OR SIMILAR

was/were ☒ mailed, postage prepaid ☐ hand delivered, to:

| Kendra Ross | 782 Saxon Court |
|---|---|
| Name | Address |
| | Charlottesville, VA 22901 |
| | City, State, Zip |
| | |
| Name | Address |
| | |
| | City, State, Zip |
| | |
| Date | Signature of Party Serving |

**CC-DR-058** (Rev. 06/2019)

**CIRCUIT COURT FOR** Prince George's County _____ , **MARYLAND**

City/County

Located at 14735 Main Street, Upper Marlboro, MD 20772   **Case No.** _____

Court Address

| Aereale Jenkins | | | Cheryl Ross | |
|---|---|---|---|---|
| Plaintiff | | vs. | Defendant | |
| PO Box 230 | | | 3547 Spottswood Ave. | |
| Address | | | Address | |
| Brandywine, MD 20613 | 913.749.8195 | | Memphis, TN 38111 | |
| City, State, Zip | Telephone | | City, State, Zip | Telephone |

## CERTIFICATE OF SERVICE

I certify that on this _____ day of _____ , _____ , a copy of the

Month          Year

document(s) titled COMPLAINT BREACH OF CONTRACT AND MEMORANDUM OF

Title(s) of document(s)

AGREEMENT BY DEFENDANTS DEFAMATION, LIBEL, SLANDER, OR SIMILAR

was/were ☒ mailed, postage prepaid ☐ hand delivered, to:

| Cheryl Ross | 3547 Spottswood Ave. |
|---|---|
| Name | Address |
| | Memphis, TN 38111 |
| | City, State, Zip |
| Name | Address |
| | City, State, Zip |
| Date | Signature of Party Serving |

**CC-DR-058** (Rev. 06/2019)

**CIRCUIT COURT FOR** Prince George's County _____ , **MARYLAND**

_City/County_

Located at 14735 Main Street, Upper Marlboro, MD 20772   **Case No.** _____

_Court Address_

Aereale Jenkins _____      vs.   Kendra Ross _____

_Plaintiff_                                        _Defendant_

PO Box 230 _____                   782 Saxon Court _____

_Address_                                         _Address_

Brandywine, MD 20613      913.749.8195         Charlottesville, VA 22901

_City, State, Zip_      _Telephone_              _City, State, Zip_      _Telephone_

## AFFIDAVIT OF SERVICE
### (Hand Delivery/Private Process)
### (Md. Rule 2-121)

**NOTE:** This form provides proof to the court that copies of documents filed in the above case by one party have been provided to the other party. Complete this form if one of the individuals listed above has asked you to hand deliver, or serve, documents to the other person in this case. Deliver, or serve, the ORIGINAL court-issued summons and the document(s) to the person indicated. <u>Attach a copy of the summons to this notice</u> before submitting this notice to the court.

I certify that I served _____ . I served him/her at _____ ☐ a.m.

_Name of person served_                              _Time_

☐ p.m. on _____ at _____ . I served him/her with a copy of

_Date_              _Address_

the following documents, which were previously filed with the court *(check all that apply)*:

    ☐ Writ of Summons _____

               _Issue date of the summons for the complaint/petition/motion listed below._

    ☒ Complaint/Petition/Motion _____

               _Name of complaint/petition/motion_

    ☐ Domestic Case Information Report (form CC-DCM-001)

    ☐ Financial Statement

    ☐ Show Cause Order and Petition _____

               _Type of petition_

    ☐ Other (list of all other documents served): _____

I completed the delivery, or service, in the following manner *(select one)*:

    ☐ I personally handed the documents to the ☐ plaintiff ☐ defendant, whose name is

    _____ .

    ☐ I left the papers with _____ , who lives at the above-listed address and is of suitable age and discretion and whose relationship to the person served is

    _____ .

    The above-listed address is the ☐ plaintiff's ☐ defendant's residence or usual place of abode.

**Description of person served**: Race _____ Sex _____ Height _____ Weight _____ Age _____

I certify that I am at least 18 years old and I am NOT the plaintiff or the defendant.

I solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

_____          _____

_Date_                            _Signature_

_____          _____

_Printed Name_                    _Telephone Number_

_____          _____

_Address_                         _Fax_

_____          _____

_City, State, Zip_                _E-mail_

**CC-DR-055** (Rev. 06/2019)

**CIRCUIT COURT FOR** Prince George's County _____ , **MARYLAND**
City/County

Located at 14735 Main Street, Upper Marlboro, MD 20772   **Case No.** _____
Court Address

Acreale Jenkins _____        **vs.**   Cheryl Ross _____
Plaintiff                                              Defendant

PO Box 230 _____              3547 Spottswood Ave. _____
Address                                                Address

Brandywine, MD 20613        913.749.8195          Memphis, TN 38111
City, State, Zip              Telephone            City, State, Zip            Telephone

## AFFIDAVIT OF SERVICE
### (Hand Delivery/Private Process)
### (Md. Rule 2-121)

**NOTE:** This form provides proof to the court that copies of documents filed in the above case by one party have been provided to the other party. Complete this form if one of the individuals listed above has asked you to hand deliver, or serve, documents to the other person in this case. Deliver, or serve, the ORIGINAL court-issued summons and the document(s) to the person indicated. <u>Attach a copy of the summons to this notice</u> before submitting this notice to the court.

I certify that I served _____ . I served him/her at _____ ☐ a.m.
Name of person served                                      Time

☐ p.m. on _____ at _____ . I served him/her with a copy of
Date            Address

the following documents, which were previously filed with the court *(check all that apply):*

    ☐ Writ of Summons_____
    Issue date of the summons for the complaint/petition/motion listed below.

    ☒ Complaint/Petition/Motion_____
    Name of complaint/petition/motion

    ☐ Domestic Case Information Report (form CC-DCM-001)

    ☐ Financial Statement

    ☐ Show Cause Order and Petition_____
    Type of petition

    ☐ Other (list of all other documents served):
_____

I completed the delivery, or service, in the following manner *(select one):*

    ☐ I personally handed the documents to the ☐ plaintiff ☐ defendant, whose name is
_____

    ☐ I left the papers with _____ , who lives at the above-listed
    address and is of suitable age and discretion and whose relationship to the person served is
_____

    The above-listed address is the ☐ plaintiff's ☐ defendant's residence or usual place of abode.

**Description of person served:** Race _____ Sex _____ Height _____ Weight _____ Age _____

I certify that I am at least 18 years old and I am NOT the plaintiff or the defendant.
I solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

_____              _____
Date                                    Signature

_____              _____
Printed Name                            Telephone Number

_____              _____
Address                                 Fax

_____              _____
City, State, Zip                        E-mail

**CC-DR-055** (Rev. 06/2019)

# FILED

JAN 0 4 2021

CLERK OF THE CIRCUIT COURT
FOR PRINCE GEORGE'S COUNTY, MD

**CIRCUIT COURT FOR** <u>Prince George's County</u>, **MARYLAND**
City/County

Located at <u>14735 Main St, Upper Marlboro, MD 20772</u>  Case No.<u>CAL20-16029</u>
Court Address

<u>Aereale Jenkins</u>                                vs.   <u>Cheryl Ross</u>
Plaintiff                                                    Defendant

<u>PO Box 230</u>                                           <u>3547 Spottswood Ave</u>
Street Address                                              Street Address

<u>Brandywine, MD 20613</u>                               <u>Menphis TN 38111</u>
City, State, Zip                     Telephone             City, State, Zip                  Telephone

## REQUEST FOR ORDER OF DEFAULT
### (Md. Rule 2-613)

I <u>Aereale Jenkins</u>_____, request an Order of Default against
                          Name

<u>Cheryl Ross</u>_____ for failing to file a response to
              Opposing party

<u>Breach Of contract and  Memorandum of Agreement</u>_____
                    Name of the petition, complaint or motion you originally filed

1.  The last known address of the opposing party is:

    <u>3547 Spottswood Ave Menphis TN 38111</u>

2.  The opposing party was served on <u>10/07/2020</u>_____  The affidavit of service was filed on
                                          Date

    <u>10/07/2020</u>_____.
        Date

3.  The opposing party (*select one*):

    ☒ is **NOT** in the military service of the United States; is not in the military service of any
       nation allied with the United States; has not been ordered to report for induction under the
       Military Selective Service Act; and is not a member of a reserve unit of any branch of the
       United States Armed Forces who has been ordered to report for active duty.

    ☐ is in the military service of the United States.

    ☐ other _____

4.  (*Select one*):

    ☒ The following facts support the above non-military status of the opposing party:

       <u>Cheryl Ross</u>
       <u>Sep-XX-1966</u>
       <u>Status date Dec. 15, 2020</u>

    ☐ Attached is confirmation from https://scra.dmdc.osd.mil that the opposing party is not in the
       military.

I solemnly affirm under the penalties of perjury that the contents of this document are true to the best of my
knowledge, information, and belief.

<u>01/04/2021</u>_____                                 _____
        Date                                                    Signature

**CC-DR-054** (Rev. 08/2020)

S C A N N E D

𝓛 20-16029

CLERK OF THE
CIRCUIT COURT

2021 JAN -4  PH 3: 32

**CIRCUIT COURT FOR** Prince George's County ~~CO IID # 49~~  ☑ **, MARYLAND**
<br>City/County

Located at  14735 Main St, Upper Marlboro, MD 20772   Case No. CAL20-16029
<br>Court Address

| | | |
|---|---|---|
| Aereale Jenkins | vs. | Kendra Ross |
| Plaintiff | | Defendant |
| PO Box 230 | | 2001 K Street NW Suite 400 |
| Street Address | | Street Address |
| Brandywine, MD 20613 | | Washington DC 20006       2028571700 |
| City, State, Zip          Telephone | | City, State, Zip          Telephone |

## REQUEST FOR ORDER OF DEFAULT
### (Md. Rule 2-613)

I, Aereale Jenkins _____, request an Order of Default against
<br>Name

Kendra Ross _____ for failing to file a response to
<br>Opposing party

Breach Of contract and  Memorandum of Agreement _____
<br>Name of the petition, complaint or motion you originally filed

1.  The last known address of the opposing party is:
<br>2001 K Street NW Suite 400 Washington DC 20006

2.  The opposing party was served on 10/ 07/ 2020 _____. The affidavit of service was filed on
<br>Date
<br>10/07/2020 _____.
<br>Date

3.  The opposing party (*select one*):

    ☒ **is NOT** in the military service of the United States; is not in the military service of any
    nation allied with the United States; has not been ordered to report for induction under the
    Military Selective Service Act; and is not a member of a reserve unit of any branch of the
    United States Armed Forces who has been ordered to report for active duty.

    ☐ is in the military service of the United States.

    ☐ other _____

4.  (*Select one*):

    ☐ The following facts support the above non-military status of the opposing party:
    _____
    _____
    _____

    ☒ Attached is confirmation from https://scra.dmdc.osd.mil that the opposing party is not in the
    military.

I solemnly affirm under the penalties of perjury that the contents of this document are true to the best of my
knowledge, information, and belief.

| | |
|---|---|
| 01/04/2021 | |
| Date | Signature |

**CC-DR-054** (Rev. 08/2020)

we



Department of Defense Manpower Data Center

Results as of : Dec-15-2020 07:10:24 PM

SCRA 5.8



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:
Birth Date:      May-XX-1991
Last Name:      ROSS
First Name:      KENDRA
Middle Name:
Status As Of:    Dec-15-2020
Certificate ID:   QWLJ62TV81BX7YX

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections.  Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

SCANNED

CASE # CAL 20-16029

CLERK OF THE
CIRCUIT COURT

2020 OCT 30 PM 1:58

CIRCUIT COURT FOR ___Prince George's____ County, MARYLAND
_____, MARYLAND
City/County
Located at 14735 Main st. upper Marlboro MD Case No. CAL 20-16029
Court Address
Aereale Jenkins                    vs.    McGuire Woods LLP
Plaintiff                                 Defendant
P.O. Box 230                              2001 "h" Street NW, suite #400
Address                                   Address
Brandywine, MD, 20613  913·749·8195       Washington, DC 20006
City, State, Zip          Telephone       City, State, Zip          Telephone

## CERTIFICATE OF SERVICE

I certify that on this ___07___ day of __October__ , __2020__ , a copy of the
document(s) titled _____
                              Title(s) of document(s)

was/were ☒ mailed, postage prepaid ☐ hand delivered, to:

McGuire Woods LLP                    2001 "h" Street NW suite #400
Name                                 Address
                                     Washington DC., 20006
                                     City, State, Zip
_____              _____
Name                                 Address
_____              _____
Date                                 Signature of Party Serving

CC-DR-058 (Rev. 06/2019)

SCANNED

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MCGUIREWOODS LLP
2001 K Street NW
Suite 400
Washington, DC 20006

9590 9402 5694 9346 2377 49

2. Article Number *(Transfer from service label)*

7019 0160 0000 9234 2826

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _____  ☐ Agent
                    ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
   GrAD

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

OCT - 7 2020

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ured Mail
☐ ured Mail Restricted Delivery
   (er $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

L20-16029

October 16, 2020

Cheryl Ross (Defendant)

3547 Spottswood Ave

Memphis, Tennessee 38111

2020 OCT 27 PM 2: 02
PR G50 C3 MD #54
CLERK OF THE
CIRCUIT COURT

I Herein state as the defendant of said cases listed below in acknowledgment of said summons from petitioners from the Circuit Court Prince George's County, Maryland Clerks Office regarding complaints as to file suit against Cheryl Ross. I Cheryl Ross accept the summons and therefore I Cheryl Ross (Defendant) will be prepared to appear in court. Therefore within this acknowledgement are all petitioners case numbers and petitioners names.

CAL-20-15993 Manuel Alston

Cal 20-16029 Aeriel Jenkins

Cal 20-15988 Qawi Robertson

Cal 20-15987 Marcus Forbes

Cal 20-15994 Kanietra Forbes

_____  10-19-2020
Signature

_____  10-19-2020
Notary Signature

JEREMY BEAN
STATE
OF
TENNESSEE
NOTARY
PUBLIC
SHELBY COUNTY

My Commission Expires
September 20, 2021

HC

**CIRCUIT COURT FOR** Prince George's County _____, **MARYLAND**
City/County

Located at 14735 Main Street, Upper Marlboro, MD 20772   Case No. _____
Court Address

Aereale Jenkins _____               Cheryl Ross _____
Plaintiff                                vs.   Defendant
PO Box 230 _____                     3547 Spottswood Ave. _____
Address                                        Address
Brandywine, MD 20613      913.749.8195         Memphis, TN 38111
City, State, Zip          Telephone            City, State, Zip          Telephone

## AFFIDAVIT OF SERVICE
### (Hand Delivery/Private Process)
### (Md. Rule 2-121)

**NOTE:** This form provides proof to the court that copies of documents filed in the above case by one party have been provided to the other party. Complete this form if one of the individuals listed above has asked you to hand deliver, or serve, documents to the other person in this case. Deliver, or serve, the ORIGINAL court-issued summons and the document(s) to the person indicated. <u>Attach a copy of the summons to this notice</u> before submitting this notice to the court.

I certify that I served _____. I served him/her at _____ ☐ a.m.
                          Name of person served                                  Time
☐ p.m. on _____ at _____. I served him/her with a copy of
            Date           Address
the following documents, which were previously filed with the court *(check all that apply):*

    ☐ Writ of Summons _____
                             Issue date of the summons for the complaint/petition/motion listed below.
    ☒ Complaint/Petition/Motion _____
                                  Name of complaint/petition/motion
    ☐ Domestic Case Information Report (form CC-DCM-001)
    ☐ Financial Statement
    ☐ Show Cause Order and Petition _____
                                  Type of petition
    ☐ Other (list of all other documents served): _____

I completed the delivery, or service, in the following manner *(select one):*

    ☐ I personally handed the documents to the ☐ plaintiff ☐ defendant, whose name is
    _____

    ☐ I left the papers with _____, who lives at the above-listed
    address and is of suitable age and discretion and whose relationship to the person served is
    _____

    The above-listed address is the ☐ plaintiff's ☐ defendant's residence or usual place of abode.
**Description of person served:** Race _____ Sex _____ Height _____ Weight _____ Age _____
I certify that I am at least 18 years old and I am NOT the plaintiff or the defendant.
I solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

_____                    _____
Date                                    Signature
_____                    _____
Printed Name                            Telephone Number
_____                    _____
Address                                 Fax
_____                    _____
City, State, Zip                        E-mail

**CC-DR-055** (Rev. 06/2019)

20-16029

## AFFIDAVIT OF SERVICE

**State of Maryland**                    **County of Prince George's**                    **Circuit Court Court**

Case Number: CAL20-16029

Plaintiff:
**AEREALE JENKINS**

PNL2020004616

vs.

Defendant:
**KENDRA ROSS; MCGUIREWOODS LLP; CHERYL ROSS**

Received by JSSI Process Server on the 1st day of October, 2020 at 10:31 am to be served on **CHERYL ROSS, 3547 SPOTTSWOOD AVE, MEMPHIS, TN 38111.**

I, OTHNIEL PENN, being duly sworn, depose and say that on the **1st day of October, 2020 at 5:46 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **COMPLAINT** with the date and hour of service endorsed thereon by me, to: **CHERYL ROSS** at the address of: **3547 SPOTTSWOOD AVE, MEMPHIS, TN 38111,** and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
10/1/2020  5:46 pm  SERVICE COMPLETE at 3547 SPOTTSWOOD AVE, MEMPHIS, TN 38111,

**Description** of Person Served: Age: 54, Sex: F, Race/Skin Color: Black, Height: 5'9, Weight: 200, Hair: Black, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.  I have personal knowledge of the facts stated herein and they are true and correct.

CLERK OF THE
CIRCUIT COURT
2020 OCT 23  PM 2:41
PR GEO CO MD #55

JULIA ACOSTA
STATE
OF
TENNESSEE
NOTARY
PUBLIC
COUNTY OF SHELBY

**OTHNIEL PENN**
PROCESS SERVER # B-233

Subscribed and Sworn to before me on

_____ day of OCT  2020

by the affiant who is personally known to
me or produced identification

X _____
NOTARY PUBLIC

My Commission Expires _____ 3/2 20 24

**JSSI Process Server**
**3485 Poplar Aveune**
**Suite 207**
**Memphis, TN 38111**
**(901) 324-7006**

Our Job Serial Number: PNL-2020004616
Ref: CAL20-16029

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1c

**JSSI Process Server**

CASE # CAL20-16029

**Priority: STANDARD**

**Field Sheet #2020004616**

Received: 10/1/2020 at 10:31 am

Court Date:      Filed:

**SERVED**

**URGENT**

SERVE:
**CHERYL ROSS, 3547 SPOTTSWOOD AVE, MEMPHIS, TN 38111**

PR GEO CO KD #49

SPECIAL INSTRUCTIONS:

**Attempts**    Server: OTHNIEL PENN

|   | Date | Time | Comments |
|---|------|------|----------|
| 1. | 10/1 | 1:56P | N/A |
| 2. | 10/1 | 5:46P | SERVED |
| 3. | / | | |
| 4. | / | | |
| 5. | / | | |
| 6. | / | | |
| 7. | / | | |
| 8. | / | | |

**Actual Service Info**

10/1/20 5:46P Type: INV    Married? _____    Military? _____

Served on: CHERYL ROSS    As: _____

Address: _____

Comments: _____

Miles _____
Hours _____
Additional Addr: 1 2 3
Courier _____
Out of Pocket Costs _____

Age 54  Sex M (F)  Race BLACK  Height 5'9  Weight 200  Hair BLACK  Glasses Y (N)

Case Number: CAL20-16029  Prince George's Circuit Court

Plaintiff
**AEREALE JENKINS**

Defendant
**CHERYL ROSS**

Type of Writ: **COMPLAINT**

Client:  EPHRAM WOODS
Firm:   EPHRAIM WOODS
Phone:  (913) 314-0299    Fax:
Client Reference Number: CAL20-16029



JSSI
PROCESS SERVER
GPS Verification/Photo Evidence
Trust But Verify

I acknowledge that I am in receipt of the legal papers named herein and that they were presented to me by the process server

Cheryl Ross
PRINT NAME OF RECIPIENT

Cheryl Ross    10-1-2020
SIGNATURE OF RECIPIENT    DATE

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1c

Service of Process
by
JSSI Process Server

**SERVED**

**CIRCUIT COURT FOR** Prince George's County _____, **MARYLAND**
City/County
Located at 14735 Main Street, Upper Marlboro, MD 20772   Case No. _____
Court Address

Aereale Jenkins                                    vs.   Cheryl Ross
Plaintiff                                                Defendant
PO Box 230                                               3547 Spottswood Ave.
Address                                                  Address
Brandywine, MD 20613        913.749.8195                 Memphis, TN 38111
City, State, Zip            Telephone                    City, State, Zip          Telephone

### AFFIDAVIT OF SERVICE
### (Hand Delivery/Private Process)
### (Md. Rule 2-121)

**NOTE:** This form provides proof to the court that copies of documents filed in the above case by one party have been provided to the other party. Complete this form if one of the individuals listed above has asked you to hand deliver, or serve, documents to the other person in this case. Deliver, or serve, the ORIGINAL court-issued summons and the document(s) to the person indicated. Attach a copy of the summons to this notice before submitting this notice to the court.

I certify that I served CHERYL ROSS _____. I served him/her at 5:46 ☐ a.m.
                        Name of person served                         Time
☒ p.m. on 10-1-20 at 3547 SPOTTSWOOD AVE, MEMPHIS, TN served him/her with a copy of
           Date        Address
the following documents, which were previously filed with the court *(check all that apply)*:

☐ Writ of Summons _____
                  Issue date of the summons for the complaint/petition/motion listed below.
☒ Complaint/Petition/Motion _____
                            Name of complaint/petition/motion
☐ Domestic Case Information Report (form CC-DCM-001)

☐ Financial Statement

☐ Show Cause Order and Petition

☐ Other (list of all other documents served): _____
                                              Type of petition

I completed the delivery, or service, in the following manner *(select one)*:

☒ I personally handed the documents to the ☐ plaintiff ☒ defendant, whose name is
   CHERYL ROSS _____

☐ I left the papers with _____, who lives at the above-listed
address and is of suitable age and discretion and whose relationship to the person served is _____

The above-listed address is the ☐ plaintiff's ☐ defendant's residence or usual place of abode.
**Description of person served:** Race B Sex F Height 5'9 Weight 200 Age 54
I certify that I am at least 18 years old and I am NOT the plaintiff or the defendant.
I solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

10-1-20
Date
OTHNIEL PENN                    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
Printed Name                    Telephone Number
3485 POPLAR AVE #207
Address
MEMPHIS, TN 38111               SERVICE@JSSI.ORG
City, State, Zip                E-mail

CC-DR-055 (Rev. 06/2019)

                                              4/6/6

CLERK OF THE
CIRCUIT COURT
PR GEO CO MD #55
2020 OCT 23 PM 2:41